No. 17,238.

## THE STATE *v*. HUNT.

BILL OF EXCEPTIONS.—*Criminal Law.*—*Order Allowing Ninety Days in Which to File Bill.*—*Invalid Only as to Excess Over Sixty Days.*—An order of the court, in a criminal proceeding, allowing ninety days in which to file a bill of exceptions, is not altogether void. The order was valid as to the sixty days it was permitted to allow by statute (section 1916, R. S. 1894), but, as to the time allowed beyond sixty days, it was invalid; and if the bill of exceptions be filed within the time validly allowed (sixty days), it was a substantial compliance with the statute, and it thereby became a part of the record.

SAME.—*Closing Statement.—When Sufficient to Show that the Evidence Was All Introduced.*—Where the closing statement in a bill of exceptions is "That the above and foregoing longhand manuscript of the evidence so taken, reported and filed, as aforesaid, contains all the evidence in said cause," such statement (when taken in connection with the caption of the bill, that "The following evidence was delivered and given to the jury trying the cause," etc.), is clearly sufficient to show that the evidence was all introduced in the cause.

RECORD.—*Transcript.—Presumption that Proceedings Were Signed.*—Certified transcripts of proceedings of courts need not show that such proceedings were signed, the presumption being that they were duly and properly signed, until the contrary is made to appear in the transcript.

CRIMINAL LAW.—*Perjury.—Evidence.—Materiality.*—In a prosecution for perjury in giving false testimony as to misconduct of a railroad employe, in an action for damages alleged to have been sustained by reason of such misconduct, testimony of the accused, in the damage suit, which, alone, was not material to the question in issue, but when so connected with the truth of the accused's testimony as to the misconduct of the employe, as to constitute a basis for the assignment of perjury thereon, is admissible in evidence.

SAME.—*Evidence.—Allowance by Judge for Detective's Service.—When Reversible Error to Admit as Evidence.*—In a prosecution for perjury, it was reversible error to allow the defendant to read in evidence, over the objection of the State, an allowance by the regular judge of an account for $819.13, and its payment out of the county treasury, in payment for services of detectives in discovering evidence of the guilt of the accused of the crime charged in the indictment.

EVIDENCE.—*One's Own Declarations Inadmissible.*—A party can not give his own declarations in evidence..

INSTRUCTIONS TO JURY.—*How Brought into the Record.—Bill of Exceptions.—Criminal Law.*—In a criminal case, instructions to the jury can only be brought into the record by bill of exceptions.

From the Elkhart Circuit Court.

*A. G. Smith*, Attorney-General, *H. D. Wilson* and *H. S. Biggs*, for State.

*J. D. Ferrall* and *J. W. Hanan*, for appellee.

MCCABE, J.—The appellee was prosecuted and acquitted of the charge of perjury, in the circuit court. The State appeals and assigns many rulings of the trial court

in the reception and rejection of evidence, and in giving and refusing instructions.

We are met with an objection from the appellee, to the consideration of the errors assigned, that the bill of exceptions is not in the record. The trial ended on the 18th day of October, 1893, when the verdict of not guilty was returned, whereon judgment of acquittal was rendered.

Ninety days' time was allowed to the State in which to file a bill of exceptions. The bill of exceptions was filed on the 7th day of December next following.

It is contended that the order was void because the statute only permits the court to allow sixty days after the judgment is rendered in which to file a bill of exceptions. That is the provision of the statute. 1 Burns' R. S. 1894, section 1916; R. S. 1881, section 1847.

But the bill was filed within sixty days next after the time the judgment was rendered. The court was authorized to allow sixty days, and it allowed sixty days, and more—it granted ninety days.

Now, does the fact that it allowed thirty days more than the statute authorized it to allow, render the whole allowance of time invalid, the sixty days it was authorized to allow, as well as the additional thirty days it was not authorized to allow? It has been held that where the order allowing time was for more than sixty days and the bill was not filed until after the expiration of the statutory limit of sixty days, such bill of exceptions, though filed within the time allowed, is not in the record. *Marshall* v. *State*, 123 Ind. 128; *Bartley* v. *State*, 111 Ind. 358.

We are of opinion that to the extent of sixty days of the time allowed, the order was valid; the order as to all the time over that was invalid; and as the bill was actually filed within the time validly allowed, it was a sub-

stantial compliance with the statute and it thereby became a part of the record.

It is contended by the appellee, that no valid judgment of acquittal was rendered, and hence no appeal lies, and for that reason we are asked by the appellee to dismiss the appeal.

In criminal cases the State is authorized to appeal in the following cases and no other: 1. Upon a judgment for the defendant quashing the indictment. 2. Upon an order arresting the judgment. 3. Upon a question reserved by the State. 1 Burns' R. S. 1894, section 1955; R. S. 1881, section 1882.

This appeal is prosecuted under the third and last specification. But there must be a judgment for the defendant in each case before an appeal will lie. The reason assigned why there is supposed to be no judgment for the defendant is that the transcript does not disclose that the record of the judgment set forth therein was signed by the special judge who tried the cause. Certified transcripts of proceedings of courts need not show that such proceedings were signed, the presumption being that they were duly and properly signed, until the contrary is affirmatively made to appear in the transcript. *Adams* v. *Lee*, 82 Ind. 587; *Anderson* v. *Ackerman*, 88 Ind. 481; *State* v. *Hanna*, 84 Ind. 183.

The motion to dismiss the appeal is, therefore, overruled.

It is next objected that the evidence set out in a bill of exceptions embodying the original longhand manuscript of the shorthand report thereof is not shown ever to have been actually introduced in evidence on the trial, on account of the closing statement of the bill of exceptions being insufficient. And, therefore, it is insisted that no question is presented to this court, for want of the evidence. The closing statement of the bill is ''That

the above and foregoing longhand manuscript of the evidence so taken, reported, and filed, as aforesaid, contains all the evidence in said cause.''

The contention is that it may be the evidence in the cause, and yet never have been introduced in evidence on the trial. We regard such contention as rather technical.

What we are required to ascertain is, what does the language employed by the judge fairly mean? If it means that such evidence was actually introduced on the trial, that is sufficient.

It would certainly be a strange construction of that language to say that the judge had reference to evidence that never was introduced on the trial. When we connect the language quoted with that in the caption of the bill of exceptions its meaning is rendered undoubted.

That reads as follows: ''The following evidence was delivered and given to the jury trying the same (the cause), and the following rulings of the court were made in respect to the admission and rejection of evidence, and objections and exceptions thereto were made and taken, as noted therein, etc.''

This is clearly sufficient to show that the evidence was introduced.

The indictment charged that the alleged perjury had been committed by the accused in giving testimony as a witness in a trial of a civil cause in the Elkhart Circuit Court, wherein one Martin Peterson, a minor, by his next friend, was plaintiff, and the Lake Shore and Michigan Southern Railway Company was defendant, to recover damages for an alleged personal injury. The alleged injury sustained by the infant was caused by his attempt to get off a certain box freight car in a freight train of that company while the train was in motion, and in which effort he, while going down the ladder in

haste, was caused to slip or lose his hold, and fall in such a manner as that his arms fell across the rail, were run over by the wheels, crushing them so that they both had to be and were amputated between the shoulder and elbow.

The boy seems not to have been connected with the railway company in any way—as employe or otherwise —and was a mere trespasser on the car.

The point of contention, on the trial of the damage suit, was whether the company was at fault in compelling the boy to attempt to get off while the train was running, and under such excitement as might, or probably might, have caused his fall and injury. It was claimed on the part of the plaintiff, that a servant of the company, a brakeman, on top of the car, ordered him off, threatened him with violence, applying to him abusive language, and pursued him with a club and struck at him therewith, which frightened and alarmed him, so that in his haste to escape the vengeance of the brakeman he became excited, so that he was caused to slip and lose his hold on the ladder, which caused his fall and injury.

The only part of these facts that the company controverted on the trial of the damage suit was that part relating to the conduct of their servant, the brakeman. The evidence of the company denied that part of the plaintiff's evidence *in toto*.

The complaint charged the facts to be as above indicated, and the answer denied them.

The material part of the indictment is as follows:

"And the said issue was then and there tried in the said Elkhart Circuit Court, before the said Honorable John M. Van Fleet, and before a jury of said county, etc.,   *   *   and upon said trial it became material to said Martin Peterson to show, by evidence in the cause,

that the said Peterson was injured and damaged by said
defendant railway company, by the willful, wrongful and
unlawful act of its brakeman, as alleged in said com-
plaint of the said Peterson, and it became material to
said Peterson to prove that on the 25th day of October,
1891, the said freight train was passing along the right
of way of the Lake Shore and Michigan Southern Rail-
way Company, going west between, etc., * * and
that a brakeman, named George Harris, being then and
there on the top of said train, ran towards the said Mar-
tin Peterson, and threatened him and struck at him in
order to make him, the said Peterson, get off said
train, and that the said George Harris ran after said
Martin Peterson, and that he had a club in his hands,
and that he struck at the said Martin Peterson, and that
said Martin Peterson fell off from the ladder of a car
upon which he was climbing, and fell under the wheels
of the said car, and that he fell on the track of said rail-
way company, and that the wheels of certain cars ran
over him, and that said William H. Hunt saw said Mar-
tin Peterson fall, and assisted to carry him away from
the track, and that one Joseph Long and one Mary J.
Long stood on the north side of the track of said railway
company at the time Martin Peterson fell, and that they
were in sight of said Peterson when he fell, and that the
said Hunt was on the south side of the track of said railway
company behind said train, and that he saw said brakeman
approach and threaten and strike at the said Martin Peter-
son, and that he saw the said Martin Peterson on the
top of the train when the said brakeman was approach-
ing him, and saw the said Martin Peterson fall off, etc.,
* * and that when said brakeman went after the said
Martin Peterson, on the top of said train, the said Mar-
tin Peterson started to get on a ladder on one end of the
car and ran down on one end of the car, and that the

said Hunt was fifteen feet south of the track on which said train was running, and that he saw said Martin Peterson start and run down the ladder, and then saw that he had fallen, and that he found the said Martin Peterson on the ground on the south side of the track after said accident, and that he was the first man that reached there, and that he helped carry the said Martin Peterson away, and to sustain said issue, etc., * * one William H. Hunt then and there appeared as a witness * * on behalf of said Martin Peterson * *, and was then and there duly sworn in said court, and took his corporal oath before said court to tell the truth, the whole truth and nothing but the truth relative to the matters then and there and therein in issue, which oath was administered * * by the Hon. John Van Fleet, judge of said court, who then and there had power and authority, and was competent to administer said oath, and the said William H. Hunt then and there, upon the trial of said issue, upon his oath aforesaid, feloniously, willfully, corruptly and falsely before the said court and jury aforesaid, did depose, testify and say, in substance, and to the effect following, that is to say: that he, the said William H. Hunt, on the twenty-fifth day of October aforesaid, knew the said Martin Peterson by sight, and that he, the said Hunt, was on the right of way of the said Lake Shore and Michigan Southern Railway Company, in the city of Elkhart, on the said 25th day of October aforesaid, between Tenth and Twelfth streets in said city, passing down to the west, and there saw a freight train of said railway company going west, and that he then and there saw said Martin Peterson on the top of one of the box cars of said freight train going west between said streets, and that he then and there saw a brakeman on the top of said train take after said Peterson to make him, the said Peterson, get down from off

said cars, and that he saw said brakeman then and there strike at the said Peterson, and saw said brakeman make him get down from off said car, and that he, the said William H. Hunt, was then and there on the south side of said railway track, * * * and was only the length of two and a half cars from said Martin Peterson when said brakeman compelled him to get down or fall from said car, and that he, the said Hunt, then and there heard said brakeman say to said Martin Peterson, while on top of said train, 'get off,' and that the brakeman then came to the end of the car, where said Peterson was, and struck at him, and that the brakeman had a club and made motions with it, and saw the said Martin Peterson start and run down the ladder on the end of the car, and that the next time he saw said Peterson he had fallen and the wheels had run over his arms, and that said Hunt was the first man to reach or come to said Peterson after the wheels of the car had so passed over the arms of said Peterson, and that he, the said William H. Hunt, helped to carry said Peterson, after he so fell, from the railway track where he fell, to a grass plat near there, and that one Joe Long helped him, the said Hunt, carry the said Peterson over to the plat of grass, and that the said Hunt was not more than six rods distant from the said Martin Peterson when the said Martin Peterson fell and was hurt as aforesaid, and that the said Martin Peterson fell off from said west end of a box car of said train, because the said brakeman then and there struck at the said Peterson; whereas, in truth and fact, it is charged *seriatim* that each one of these matters so testified to is false, as the said William H. Hunt well knew."

The shorthand reporter who had taken down the testimony in the damage suit, being sworn as a witness on behalf of the State, was asked whether the following

question had been asked of the defendant, Hunt, as a witness in the damage suit, to wit: "After he fell, who was the first person that got there?" Objection being interposed by the defendant to the question, the State proposed to prove that his answer to that question was: "The first two men I recollect was Joe Long and Carlin, and the first woman was Mrs. Long."

There was no error in sustaining the objection, because the charge in the indictment is that Hunt falsely swore that he was the first man that reached the injured boy after he fell. The offered evidence does not propose to prove that he testified as charged in the indictment, but that he testified to the contrary; that two other men were the first to reach the boy after his injury.

In the damage suit appellee, as a witness on behalf of Peterson, had answered questions as follows:

"Where was it he fell?"    Ans.    "On the track."

Q. "Then what was done?"    Ans.    "He was picked up and carried back to the side."

The State then proposed to prove the next question to and answer by appellee as follows:

"Who did it?"    Ans.    "I helped some one; there was a man there, I don't know who he was; there was another man there."

Proof of this testimony given by Hunt in the damage suit was objected to because it did not tend to support the charge of perjury in the indictment. The reason urged here, in support of the ruling excluding it, is that it was not material to the point in question, and that the point in question in the civil suit was whether the brakeman, the servant of the company, had been guilty of the willful misconduct of driving the boy off the train while it was running. That evidently was the principal issue; the main point in question in the civil suit to which the alleged false testimony was intended to be directed.

If such testimony was wholly immaterial to that question, its absolute falsity would not constitute perjury. 1 Burns' R. S. 1894, section 2093; R. S. 1881, section 2006; *State* v. *Reynolds*, 108 Ind. 353; *State* v. *Cunningham*, 116 Ind. 209.

The fact that appellee helped carry the boy back, or to the side, alone was wholly immaterial to the point in question in the civil suit. But, as connected with the truth of the appellee's testimony as to the misconduct of the brakeman, and as to whether the appellee was present and saw the whole transaction, the evidence might be so material as to constitute a basis for the assignment of perjury thereon as is done in the indictment before us. In such a case the circumstances surrounding the transaction detailed by the witness may be such as that they greatly strengthen the probability that the witness was present and saw and witnessed the facts material to the point in question to which he has testified, though those circumstances in and of themselves alone considered would not be material to the point in question. 18 Am. and Eng. Encyc. of Law, 310, 311, and authorities there cited; 2 Archbold Crim. Pr. & Pl. 1727; 3 Greenl. Ev., section 195; 2 Whar. Crim. Law, section 1277.

"As where, in an action for trespass by sheep, a witness proved that he saw thirty or forty sheep in the close, and he knew they were the defendant's by their being marked in a particular way, describing it, whereas the defendant never marked his sheep in that way; this was holden to be material, for the reason assigned by him made his account more credible." 2 Archbold Crim. Pr. & Pl. 1727.

A circumstantial account of all that took place on the occasion of the boy's injury may have led the mind of the jury to give more credence to the appellee's testi-

mony that he was present and saw the brakeman's alleged misconduct.

A cross-examination calling out details and circumstances surrounding a transaction to which a witness has testified is often an effective means of determining whether he has told the truth about the main fact testified to; and the idea that a witness may bolster up one false statement by another, and escape the penalty of perjury for such second statement because the second false statement is not directly material to the point in question, is one not favored by the law.    It is true such second statement must be material to the point in question. But it is indirectly material if it tend to support or induce credence in the first statement, and that is sufficient materiality to form the basis for an assignment of perjury.

We are of opinion that the court erred in the exclusion of that evidence.

The ruling as to the 35th question to the shorthand reporter is substantially the same as the one last mentioned, and it was error.

Questions 38 to 70, both inclusive, and the answers thereto by the same witness, and excluded by the court, proposed to prove what appellee had testified to on cross-examination touching his testimony in chief in the civil suit as to the misconduct of the brakeman.

It is laid down in the authorities that, "the witness's answers on his cross-examination  are material, and may be assigned as perjury, however discursive they may be, if they go to his credit."    2 Whar. Crim. Law, sections 1279, 1277; 3 Greenl. Ev., section 195.

So far as these several matters contained in said questions and answers had been assigned in the indictment for perjury and tended to strengthen or give credit to the evidence on the point in question they were admissible

in evidence, and the court erred in excluding most of them.

One Mary Overlease, as a witness on behalf of the State, testified to declarations made by the defendant out of court to the effect that he did not see a brakeman knock the boy from the train, and that there was no brakeman near him. The defendant was permitted to prove by Gideon Macomber, over the objection of the State, that said witness had heard the accused make other declarations out of court consistent with his alleged false testimony, and to the effect that he had seen the boy driven off the train.

As was said in *Logansport, etc., Turnpike Co.* v. *Heil,* 118 Ind. 135: "Where a party makes admissions they are accepted as original evidence, upon the ground that the admissions of a party against his interest are made because they truthfully embody the facts, and they are, therefore, substantive proof of the facts admitted. They relate to the facts themselves as facts, and not merely to the question of the trustworthiness of the party as a witness. If the appellee had not testified at all, his admissions would have been competent as original evidence. The admissions tended to prove that the fact was that the accident did not occur in the manner described by him in his testimony, but in an entirely different manner. These admissions against his interest were evidence that the facts stated as the cause of action did not exist, and, therefore, evidence of these admissions did much more than affect the question of credibility. *Blossom* v. *Barrett,* 37 N. Y. 434; *Lucas* v. *Flinn,* 35 Iowa, 9; *Hodges* v. *Bales,* 102 Ind. 494.

"The cases which declare that where a witness is impeached by evidence of contradictory statements made out of court, he may be sustained by evidence of statements made about the same time corresponding with those

made on the trial, are not in point.    *    *    *    The rule which here applies is the general one that a party can not give his own declarations in evidence." See *Allen* v. *Davis*, 101 Ind. 187; *Hodges* v. *Bales, supra*.

We think the court erred in receiving the testimony.

The court permitted to be read in evidence, over the objection of the State, an allowance by the regular judge of an account for $819.13, and its payment out of the county treasury in payment for services of detectives in discovering evidence of the guilt of the accused, with others, of the crime charged in the indictment.    A large amount of other evidence of the employment by the judge of the court of persons to discover evidence pointing to appellee's guilt of the charge in the indictment was admitted over the objection of the State.    No part of such evidence as received had the slightest bearing upon the issue on trial, namely, whether the appellee had committed perjury.

If such irrelevant evidence had no tendency to mislead the jury, its admission would not constitute available error.    *Louisville, etc., R. W. Co.* v. *Miller*, 37 N. E. Rep. 343.

But where such irrelevant and immaterial evidence is liable or likely to mislead the jury, its admission is material and prejudicial error.

Here the argument made in this court on that point indicates the probable trend of the argument below; and that is, that the regular judge had overstepped the bounds of his authority in spending that much of the people's money in attempting to ferret out the alleged crime.

Whether the regular judge or any circuit court has power to so expend money in the discovery of crime, it is not necessary that we should decide, and we intimate no opinion thereon.

The State *v*. Hunt.

This might have tended to prejudice the jury, who were, presumably, taxpayers of the county, against the prosecution. The court erred in receiving that evidence.

The giving and refusal to give a large number of instructions are assigned, specifically and severally, as error here. None of the instructions are embodied in a bill of exceptions. They are copied into the transcript, with no other authentication of them as parts of the record below than a statement on the margin of each, to wit: "Given, and excepted to by the State, October 17, 1893. Joseph W. Adair, Judge." "Refused, and excepted to by the State October 17, 1893. Joseph W. Adair, Judge."

Treating these marginal statements as if they were in the proper legal form, for many of them are so, we hold that the instructions are not in the record.

It has been held that instructions in criminal cases can not be incorporated in the record in that way, though they may be so incorporated in a civil case, and that in a criminal case they can only be brought into the record by a bill of exceptions. *Leverich* v. *State*, 105 Ind. 277; *Meredith* v. *State*, 122 Ind. 514.

The instructions not being in the record, no question as to the correctness of the action of the court in giving and refusing the same is presented.

The appeal is sustained, at the costs of the appellee as to the appeal.

Filed May 15, 1894.