# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1910.

---

NATCHEZ, COLUMBIA & MOBILE RAILROAD COMPANY *v.*
M. A. LAMBERT.

[54 South. 836.]

1. COMMON CARRIERS. *Personal injuries. Carrying passengers beyond station. Liability.*

In the absence of some good reason, it is the duty of common carriers to allow passengers to get off at the proper depot and a failure to do so entitles the passenger to recover at least nominal damages.

2. SAME.

If in any case it is necessary for a passenger train to be pulled away beyond the depot and into its yards, it is the duty of the company to notify passengers of its purpose to return them to their proper landing place and if it fails to do so, it is negligence, and any damages occasioned any passenger as the direct result makes the company liable therefor.

3. CARRIERS. *Personal injuries. Proximate cause.*

A passenger was carried by her station for about three hundred yards, where the train stopped in the railroad yard, without any

(310)

notice of the purpose to return to the station, and the passenger voluntarily alighted a few minutes thereafter without any request to be carried back to the station and walked back to the station through the rain, where she waited four hours for a train which she was to take on another road and by getting wet in walking back to the depot caught a severe cold. The train which carried her by the depot backed into the station, in about twenty or thirty minutes after the passenger had alighted, for the purpose of allowing passengers to alight. *Held*, that the running of the train beyond the station was not the proximate cause of any injury and that the passenger was only entitled to recover nominal damages.

APPEAL from the circuit court of Lawrence county.

HON. R. L. BULLARD, Judge.

Suit by Mrs. M. A. Lambert against the Natchez, Columbia & Mobile Railroad Company. From a judgment for plaintiff, defendant appeals.

The appellee took passage on a train of the appellant from Topeka, Mississippi, to Norfield, Mississippi, a junction point with the Illinois Central Railroad Company; it being her intention to connect at the latter point with the Illinois Central train, due about four hours after the arrival of the appellant's train. When the appellant's train reached Norfield, it was raining, and instead of stopping at the depot, where a work train with flat cars was occupying the track, it passed the depot a distance of about two hundred and fifty yards (as was frequently done), intending later to back into the depot. After the train stopped, appellee remained in the coach a few minutes and voluntarily alighted, in the absence of the conductor, without saying anything to him, or making any request to be carried to the depot, and, leaving other passengers in the coach, walked back to the depot through the rain, where she waited in the depot about four hours for her train, and caught a severe cold. Some minutes later, the train did back into the depot, where the other passengers and freight and baggage were discharged. She brought suit, and recovered the sum of four hundred and fifty dollars punitive damages.

*T. Brady, Jr.,* for appellant.

Appellee lived at or near Topeka, upon appellant's line of railroad; she could reasonably expect to have to make occasional, if not frequent, trips over its road; it was her duty, then, to acquaint herself with its customs, and having ascertained them, she would have had a right to rely upon them. This custom was not contrary to any contract, and the alleged special contract was not contrary to, nor did it in any manner abrogate, the established custom. No duty to appellee, nor any contract with her, was breached by carrying her past the Illinois Central depot to the regular and customary stopping place; no special duty nor special contract was breached until appellant refused to carry her back to the Illinois Central depot. There was no obligation laid on appellant to stop at the Illinois Central depot on its way in, if it later, and in a reasonable time, safely deposited her there. It did carry her by the depot of the connecting line and it would have carried her back in a few minutes, if she had given them time. There was no refusal on the part of the appellant, by word or deed, to carry her back to the depot, no invitation was given to her to alight, and she was at all times treated kindly and courteously, as she unhesitatingly states.

But, being perhaps as far as two hundred and fifty yards from the Illinois Central depot, and having only four hours in which to catch her train for McComb City, and although her fellow travelers were sitting in the coach, appellee waited for a length of time which she estimates to have been as long as five minutes, then, taking her baggage, left the coach of her own free will and accord and started back toward the Illinois Central depot, walking. As a matter of fact, the testimony shows that the passenger train pulled in past the switch-point, the work train pulled out of the siding onto the cleared main-line, yet appellee, traveling down the same track and walking, beat the work train to the trestle.

After setting out its freight cars onto the side track,. the passenger train, or the passenger coach and the freight car with the transfer freight, backed down to the Illinois Central depot, as was customary, and as had been the intention of its crew all the time, in order to deposit any passengers for that point, including appellee. In the face of such facts, can appellee now successfully contend that there was "negligence," "wantonness," "wilfulness," "maliciousness," failure of duty or breach of contract on the part of appellant? It fulfilled every obligation laid upon it by law, by custom and by contract, general or special, express or implied. Appellee's own unreasoning impatience was the sole cause of her failure to be deposited at the depot of the Illinois Central Railroad Company as "safe and sound" as when she entered appellant's train at Topeka an hour or so before. Appellant did all that it could to carry out its "contract" except to lock its doors on appellee. She says that she depended on the conductor to put her off, yet she took matters into her own hands at the first opportunity and to her alone are any injurious consequences to be ascribed. Having made it impossible for appellant to carry out the terms of its contract with her, she cannot complain of its having been breached by appellant.

If it is conceded that appellant's conduct was negligent and was a breach of duty to the appellee, then appellee's own hasty and ill considered acts, and not this negligence, were the proximate cause of appellee's getting wet and her subsequent indisposition. She did not have to leave the coach in the first place, which she knew, or should have known, or could easily have ascertained. She was no ignorant, unlettered, untraveled woman, nor a stranger to this vicinity. There was nothing to prevent her remaining in the car until it was backed to the Illinois Central depot, but, once she had left the coach and started back for the depot, appellee should have exer-

cised sufficiently her eye-sight, hearing and judgment to have chosen a route that would be safest and best. The hour was about 2:30 o'clock on a summer afternoon and, though a light rain was still falling, there was nothing to obstruct appellee's view of her entire surroundings. She had proceeded down the track but a short distance when she came to the point where it crosses a wide path, along which it then runs parallel for some thirty-five feet or more. This path is built up with saw-dust and bark, topped with cinders and about ten feet wide, being a little lower than the track upon which she was walking. There was no good reason why she should not have taken this, since she acknowledges that she saw it, yet she continued to follow the track.

Meanwhile, the work train, its way having been cleared, proceeded down the track. The engineer saw her before she reached the point where the track and path divide and the trestle begins and he at once began whistling to attract her attention as he slowly backed on down at a safe distance. Appellee's hearing seems to have been defective for she did not hear the warning whistles. A very short distance further brought her to the point where the track diverges to the north and left and crosses a low trestle about two hundred feet long. To appellee's right was the wide, well-constructed, well-drained, safe path; immediately in front of her was a high trespass sign, advising the public that it was dangerous to cross that trestle and that those using it did so at their own risk; behind her whistled the work train, whose way she still blocked; yet appellee refused to take the path, which she saw, disregarded the trespass sign, which she should have seen, and deliberately, recklessly and voluntarily chose the walk across the cross-ties of the slippery, unfloored, unrailed trestle, through which, or from which, she might have fallen at any step.

Appellant could not be expected to foresee that the result of its failing to leave appellee at the Illinois Central

depot would result in her choosing the dangerous way across the railroad trestle, when there was a safe way immediately at hand, or that the succeeding train of circumstances would attend her lack of diligence. Appellee's injuries, as connected with appellant's alleged negligence, were indirect, remote and brought about by intervening causes over which appellant had no control and which it did not set in motion. If there had been a forced choice on appellee at the coach and at the trestle, especially at the trestle, the situation would have been different, but appellee's choice was deliberate, and appellant cannot be held responsible for the consequences of her gross negligence and the misguided, though well-meant, efforts of a total stranger.

The rule of damages of which the above is an application is too elementary to require supporting citations, but appellant calls attention to the case of *Dix* v. *Brown,* 41 Miss. 131.

*Magee & McGehee,* for appellee.

With reference to whether appellant discharged all the obligations that it owed appellee as its passenger, or was guilty of neglect—and the character and degree of that neglect—and, also, whether appellee acted with ordinary prudence and care, such as was expected of one in her situation, in order to avoid the injury complained of, and to mitigate her damages, was a question which should have been, and was, left to the sound discretion of an impartial jury. Surely appellee could not have been expected to do otherwise than to get off the train where and when she did. Since appellant had failed to stop its train at the station of the Illinois Central Railroad, or to return with appellee within a reasonable time, and she knowing that her train had been switched on a side-track up in the mill yard of the Butterfield Lumber Company, the engine having been cut loose from it and carried beyond the scope of her vision, and the conductor on said

train, although he knew he had carried her beyond her destination, did not come into the coach at all and inform her of the private intention that he might have had to back the train to the depot at some convenient time, the question of the negligence of appellee in choosing to get off rather than remain on the train was a question of fact for the jury. See 44 Miss. 466, 71 Texas 274. No adjudicated case can be found or well considered *dictum* produced, that would tend to hold otherwise.

We do not deny the correctness of the rule of law as enunciated in the case of *Wells* v. *Railroad Co.*, 67 Miss. 30, cited by appellant, to the effect that the conductor is not, ordinarily, the agent of a railroad company to contract with persons for transportation. We know that he cannot adapt his schedule to suit a passenger's idea of right. But that case cannot under the phase of the case at bar be deemed applicable, for the reason that appellee does not base her right to recovery in this case upon any special contract made with the conductor on appellant's train, but on the contrary she relies upon the general contract imposed by law between any common carrier and the traveling public by which a common carrier is bound to let off its passengers at their appointed destination. Appellee being a passenger on appellant's train, and having paid her fare from Topeka, Mississippi, to Norfield, Mississippi, informing the conductor in due time that she desired to get off at the depot, the Illinois Central depot, the only depot at Norfield, the usual and customary place of letting off and taking on passengers, was entitled to be put off there not as a mere matter of courtesy, but by law, by custom and by right paramount.

There was negligence in passing the station, as the court says in *Kendrick et ux, supra,* for they do not show that it was impossible to have stopped the train at the station, and in the absence of such showing, the court will presume that it was possible for it to have stopped

there; then, if possible, the employees could have stopped it by the exercise of the "utmost care and vigilance." And the slightest neglect or fault, *livissima culpa,* renders the common carrier liable. See *N. O. J. & G. N. R. R. Co.* v. *Albritton,* 38 Miss. 274.

The record shows that appellees proved everything that was necessary to prove to make out her case in the court below for both nominal and actual damages, and we respectfully submit that the verdict should not be disturbed.

MAYES, C. J., delivered the opinion of the court.

In the absence of some good reason therefor, it was the duty of this railroad company to allow Mrs. Lambert to get off of its train at her proper depot at the very first opportunity that was presented. In this case Mrs. Lambert should have been landed at her proper depot before the train was carried into the yards, and because this was not done she is clearly entitled to nominal damages only. If it was necessary, in any case, for a passenger train to be pulled way beyond the depot and into the yards of the company, it is certainly the duty of the company to notify the passengers of its purpose to return them to their proper landing place, and if it fail to do this it is negligence, and any damage occasioned any passenger as the direct result makes the company liable therefor.

In this case, however, the main injury complained of was not the direct, proximate result of negligence of the company in carrying Mrs. Lambert by the depot, or failing to notify her of their purpose to return the train to the proper depot. It had been raining, and was raining at the time the train pulled into the yards. Mrs. Lambert knew this, and although she had four hours to wait after she reached the depot before the train she was to take over the Illinois Central Railroad to McComb City would arrive, she got out of her coach into

the rain and slush, and undertook to walk back some two hundred or three hundred yards to the depot. It was getting off of the train and going into the rain that made her ill and caused the damage for which she sues. When she got off, the train had only been there a few minutes, and in twenty or thirty minutes the train was carried back to the depot for the purpose of allowing passengers to get off there. She had ample time to wait, and made no effort to have the train carry her back. She was at the terminus of the road, and knew that she could not be carried further. We do not think she was entitled to recover more than nominal damages, and the court should have so instructed.

*Reversed and remanded.*