## The Chicago and Eastern Illinois Railroad Company *v.* Mitchell.

[No. 8,321.   Filed May 26, 1914.]

1. CARRIERS.—*Injury to Passengers.—Negligence.—Liability of Carrier.*—The negligence of a brakeman on a passenger train in directing a passenger to alight at the wrong station renders the carrier liable for all damages following as a direct, natural and proximate result.  p. 357.

2. NEGLIGENCE.—*Proximate Cause.*—The proximate cause of an injury is that from which the injury immediately, directly and naturally resulted.  p. 358.

3. NEGLIGENCE.—*Proximate Cause.—Intervening Cause.*—Where an independent responsible agency intervenes after the original wrongful act and becomes the direct cause of the injury, it will be deemed to be the proximate cause, unless its character and the circumstances of its intervention were such that it might have been reasonably expected that it or a similar agency would intervene so as to produce the injury which actually occurred.  p. 358.

4. CARRIERS.—*Injury to Passengers.—Intervening Act of Passenger.—Proximate Cause.*—Where a girl fourteen years old, inexperienced in traveling, was negligently directed by a brakeman to alight at the wrong station, and she thereupon started alone to walk to her destination, a distance of thirty-five miles, suffering pain and injury as a consequence of her undertaking, the question of whether the child's conduct was an independent intervening cause that would relieve defendant from liability for such injuries depends upon whether such conduct on her part ought to have been expected by a person of ordinary prudence in the position of such brakeman.  p. 359.

5. NEGLIGENCE.—*Contributory Negligence.—Subsequent Conduct.*—Contributory negligence can be established only by proof of negligent conduct on the part of the injured person coexisting with the negligence on the part of the wrongdoer and coöperating with it in causing the injury, and is thus distinguishable from the subsequent conduct of the injured person which aggravates the injury and which under no circumstances relieves the wrongdoer from liability for the injury actually resulting from his negligence, while the establishment of contributory negligence does relieve him.  p. 359.

6. CARRIERS.—*Injury to Passengers.—Proximate Cause.—Burden of Proof.*—Where a girl fourteen years old, inexperienced in traveling, was negligently directed by the brakeman to alight

at the wrong station, and after discovering the mistake she undertook to walk to her destination, a distance of thirty-five miles, the burden was upon her, in an action to recover for injuries resulting from such walk, to show that such brakeman's negligence was the proximate cause of such injuries; that is, that the brakeman's negligence placed her in such position as to render her subsequent conduct necessary or reasonable and that such conduct was reasonably to have been expected.   p. 360.

7. NEGLIGENCE.—*Subsequent Conduct of Injured Person.—Proximate Cause.—Question for Court or Jury.*—Whether injuries resulting from the conduct of the injured person subsequent to the negligent act of another were the proximate result of such negligence is a question of law for the court, where the facts are undisputed and of such character that only one inference can be fairly and reasonably drawn therefrom; otherwise the question is one of fact for the jury.   p. 360.

8. CARRIERS.—*Injury to Passengers.—Negligence.—Proximate Cause.—Question for Jury.*—Where the brakeman on a passenger train negligently directed a girl fourteen years of age, who had no experience in traveling and who had but forty-five cents with her, to leave the train thirty-five miles short of her destination at four o'clock in the afternoon, and on learning that there would be no passenger train for two days, and being desirous of reaching the bedside of her sick sister, she proceeded to walk notwithstanding offers of accommodations tendered to her by the station agent and his wife, the question of whether the injuries suffered by her as a result of her walk were the proximate result of the brakeman's negligence was for the jury.   pp. 362, 363.

9. CARRIERS.—*Injury to Passengers.—Duty of Passenger.—Enhancement of Damages.*—It is the duty of a passenger wrongfully discharged from a train to use reasonable care not to enhance the damages by his subsequent conduct.   p. 363.

10. CARRIERS.—*Injury to Passengers.—Instructions.*—In an action for injuries alleged to have resulted from being directed to leave a train at the wrong station, where there was evidence showing that the station agent and his wife offered plaintiff the accommodations of their home until the arrival of the next train, which plaintiff refused, there was no evidence or claim that the carrier had contracted to care for such passenger at such station until the arrival of the next train, the court erred in instructing the jury that no contract was pleaded that plaintiff was to be carried to the station where she was discharged and there to be entertained over night or for any length of time in the home of the station agent or of any other person, etc.   p. 364.

11. CARRIERS.—*Injury to Passengers.—Instructions.*—In an action by a passenger, a girl of fourteen years, for damages for

being directed to leave the train at the wrong station, an instruction on the question of plaintiff's subsequent conduct, stating that children of tender years are not to be judged by the same standard as the conduct of persons of mature years, and that "this is a reasonable and humane rule, and through all branches of the law, whether contract or tort, there runs a line distinguishing children of years too few from those old enough to possess and exercise these faculties," and that "this is a doctrine taught by every man's experience and sanctioned by the law," was objectionable in that it did not contain a statement of any proposition of law, was argumentative, and purported to advise the jury as to the results of human experience.   p. 365.

12.   EVIDENCE.—Self-Serving Declarations.—Res Gestae.—In an action by a passenger for injuries in being negligently directed to leave a train at the wrong station, statements made by such passenger the following afternoon on arriving at her destination were not a part of the res gestae, and being self-serving, were improperly admitted, where there was no attempt to impeach plaintiff, although there was evidence that she had made different statements out of court.   p. 366.

From Benton Circuit Court; J. T. Saunderson, Judge.

Action by Julia E. Mitchell, by her next friend, McClellan Mitchell, against the Chicago and Eastern Illinois Railroad Company. From a judgment for plaintiff, the defendant appeals. Reversed.

Homer T. Dick and Charles M. Snyder, for appellant.
Daniel Fraser and Will Isham, for appellee.

LAIRY, J.—Appellee, a girl about fourteen years of age purchased a ticket entitling her to transportation as a passenger over appellant's railroad from Lochiel, Indiana, to Coal Bluff in the same State, and boarded one of appellant's passenger trains for the purpose of making the journey to visit a sister who lived at Coal Bluff and who was at the time sick. When the train arrived at Stone Bluff appellee, believing that she had reached her destination, left the train, as she claims through the fault of the brakeman in miscalling the name of the station and informing her that she had reached the station where she was to get off. The station at which she alighted was about thirty-five miles short of

her destination. After she ascertained that she was at the wrong station and learned the distance from that place to her destination, she undertook to walk the remainder of the distance leaving Stone Bluff about four o'clock in the afternoon of a hot July day. Her testimony shows that she walked until about ten o'clock at night and then lay down by the side of the track and slept until daylight when she continued her walk until about eleven o'clock when she reached Mecca, a station on appellant's road within a few miles of Coal Bluff, where appellant's agent saw her and gave her money and told her to go to the hotel, get her dinner and wait until her relatives, who had been notified by telephone, should come for her. In the afternoon her relatives came and took her to their home. The testimony shows that when she reached the home of her sister she was so stiff and sore that she could hardly walk, and that her feet were sore and blistered and pained her. She testified that she suffered for about a month.

Appellee by her next friend brought this action to recover damages resulting from the negligence of the agents of appellant company in inviting her and inducing her to alight from the train at Stone Bluff instead of carrying her to the station to which she had paid her fare. The jury returned a verdict for $400 in favor of appellee. Appellant's motion for a new trial was overruled and judgment was rendered on the verdict. The action of the trial court in overruling appellant's motion for a new trial presents the only question relied on for reversal.

There is evidence in the record from which the jury was justified in finding that appellant's brakeman negligently directed appellee to get off the train at Stone Bluff 1. and that he assisted her to alight at that station. This negligence on the part of its brakeman rendered appellant liable for all damages to appellee which followed as the direct, natural and proximate result of such negligence. Appellant practically concedes that it is liable to

appellee for all damages which resulted from delay and personal inconvenience caused by the act of putting her off the train at the wrong station, as well as for any expense incident to such delay; but it takes the position that the inconvenience and hardships which she suffered on her long walk including their effects upon her physical condition, resulted from her own voluntary conduct and that the negligent act of appellant cannot be regarded as the proximate cause of anything which resulted as a consequence of the walk voluntarily undertaken by appellee. Appellant claims that under the evidence in this case no substantial damages are shown to have resulted to appellee as the proximate cause of appellant's negligence, and that the recovery should have been limited to nominal damages.

The general principles in relation to the proximate cause of injuries are well settled; the difficulty encountered by the courts arises in applying these principles to the varied facts as presented by the different cases which arise. It is well settled, that if an injury results immediately, directly and naturally from a wrongful act, that act will be deemed the proximate cause. It is equally well settled that where an independent responsible agency intervenes after the original wrongful act and becomes the direct cause of the injury, such intervening agency will be deemed the proximate cause, unless the character of the intervening agent and the circumstances under which it intervened were such that it might have been reasonably expected that such agent or a similar one would intervene in such a way as to produce the injury which actually occurred. In a recent decision of this court the subject of intervening agencies as affecting proximate cause was discussed, and nothing further need be said upon the subject at this time. *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822.

There can be no doubt that whatever suffering and inconvenience appellee experienced as a result of her walk from

Stone Bluff to Mecca was caused directly by her own voluntary conduct. Whether this conduct on the part of appellee can be regarded as a responsible intervening cause which breaks the line of causation between the original wrongful act of appellant and the inconvenience and suffering occasioned by her walk, must depend upon the question of whether such conduct on her part ought to have been expected or foreseen by a person of ordinary prudence in the position of the servants of appellee who were responsible for the original wrongful act.

This court is aware that conduct on the part of an injured person which occurs after the injury and which has a tendency to aggravate it or to increase the damage, has been generally spoken of as contributory negligence, but such subsequent conduct is not, in any proper sense, contributory negligence. Contributory negligence can be established only by proof of negligent conduct on the part of the injured person coexisting with the negligence on the part of the wrongdoer and coöperating with it in causing the injury; and, when so established, it precludes a recovery. If, however, a person who is injured by the wrongful act of another, subsequently does some act which aggravates the injury, such conduct could, under no circumstances, relieve the wrongdoer from liability for the injuries actually produced by his wrongful act, but would, under some circumstances relieve him from liability for the damages which were caused by the subsequent act of the injured party. We are required, therefore, to treat the conduct of appellee, which occurred subsequent to the wrongful act of appellant and which was disconnected from it, as an independent cause rather than as contributory negligence.

If appellee's subsequent conduct was such as might reasonably have been expected from one of her age and experience, in view of the conditions surrounding her and under the circumstances in which she had been placed by the

wrongful act of appellant, then such conduct ought to have been foreseen and expected to occur and appellant ought not to escape liability for the direct consequences of such conduct; but, on the other hand if her conduct when considered in the light of her age and experience and if the conditions and circumstances surrounding her were not such as should have been expected or foreseen then appellant should not be held responsible for any damages which were caused by such conduct.

Before an item of damage can be recovered in an action based on negligence it is incumbent on the plaintiff to prove that the negligence of the defendant was the proxi-

6. mate cause which produced such item of damage; and, where it appears that some of the damages sought to be recovered resulted from conduct on the part of

7. plaintiff subsequent to the negligence of the defendant relied on, he must show that the negligence of the defendant placed him in such a position as to render such action necessary or reasonable and that his conduct was such as might have been reasonably expected of such a person under the circumstances which surrounded him. As to whether the conduct of the injured party was reasonably necessary or proper, and therefore ought to have been expected or foreseen, must depend upon the circumstances of each particular case. If the facts are undisputed and are of such a character that only a single inference can be drawn therefrom by any fair and reasonable mind, the question is one of law for the court, but in the great majority of cases the question is one of fact for the jury. If a railroad carrier wrongfully discharges a passenger at a point on its right of way distant from any town and adjacent to a wood or field, there could be no question that the circumstances under which he was thus placed would require some action on his part to extricate himself from the situation in which he was placed, but whether he pursued the reasonable or prudent course under the circumstances might still be

a question of fact for the jury. On the other hand, if such a carrier wrongfully discharges a passenger at a town or station where accommodations can be secured, a different case is presented. Under some circumstances it has been held that a person mature in years and judgment who, without making any effort to secure accommodations or other means of transportation at the station where he has been wrongfully discharged, voluntarily encounters inclement weather in an attempt to walk to his destination, where by a reasonable effort, he might have secured other means of transportation or secured accommodations until such time as he could have safely pursued his journey, will be denied a recovery for any damages resulting from such conduct: In such cases the conduct of the person injured is held to be unreasonable and imprudent as a matter of law. *Indianapolis, etc., R. Co.* v. *Birney* (1874), 71 Ill. 391; *Childs* v. *New York, etc., R. Co.* (1894), 77 Hun 539, 28 N. Y. Supp. 894; *Natchez, etc., R. Co.* v. *Lambert* (1910), 99 Miss. 310, 54 South. 836, 37 L. R. A. (N. S.) 264; *Carter* v. *Southern R. Co.* (1906), 75 S. C. 355, 55 S. E. 771; *Texas, etc., R. Co.* v. *Cole* (1886), 66 Tex. 562, 1 S. W. 629; *Francis* v. *St. Louis Transfer Co.* (1877), 5 Mo. App. 7. Under other circumstances the question as to whether the conduct of the person who had been wrongfully discharged as a passenger was reasonable and prudent and ought to have been reasonably expected, is held to be one of fact for the jury. *Louisville, etc., R. Co.* v. *Fleming* (1884), 14 Lea (Tenn.) 128; *Galveston, etc., R. Co.* v. *Turner* (1893), 23 S. W. (Tex. Civ. App.) 83; *Sloane* v. *Southern California R. Co.* (1896), 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; *Cain* v. *Louisville, etc., R. Co.* (1905), 84 S. W. (Ky.) 583; *Malone* v. *Pittsburgh, etc., R. Co.* (1893), 152 Pa. St. 390, 25 Atl. 638.

In this case the evidence shows that appellee alighted from the train at Stone Bluff on Saturday afternoon at about four o'clock; that she had learned that her sister

who lived near Coal Bluff, was sick and that she was on her way to her sister's home; that she learned that there would be no passenger train upon which she could proceed to her destination until Monday; that she was only fourteen years of age and without experience in traveling and had only forty-five cents in her possession; that she first talked to a clerk in a store who told her that he was a married man, and who offered her the accommodations of his home until such time as she could pursue her journey, and that she afterwards talked to the agent of appellant company. The evidence further shows that the agent informed appellee that there would be a freight train leave there on Sunday morning about nine o'clock, and that he would make arrangements for her to be taken to her destination on that train if she would stay over night, and both he and his wife offered to keep her at their home without charge and insisted on her staying. She insisted on proceeding on foot and, when the agent and his wife protested against her undertaking such a walk, she falsely stated, for the purpose of "getting away" that she had relatives at Yeddo a station about eleven miles distant and that she could easily walk to that place and that she would feel more comfortable with relatives. In view of this statement the agent told her that, if she would wait, he would telephone her relatives at Yeddo to meet her at Veedersburg that evening, and that he and his wife would take her to that place. She declined this offer as well as the others and started to walk down the railroad track when the agent and his wife followed her and again endeavored to dissuade her from undertaking the trip, but she declined their advice and their proffered hospitality and proceeded on her way. We would have no hesitation in holding as a matter of law that such conduct on the part of a person of mature years, situated under circumstances such as are shown by the undisputed evidence in this case, would have been so imprudent, unreasonable and reckless that it could not have

been reasonably expected or foreseen; but in view of the sex, age and experience of appellee and in view of the sickness of her sister and her apparent anxiety to reach her destination on that account we cannot say that the question should not have been submitted to the jury. If by reason of her age and inexperience, she had not sufficient judgment and discretion to understand and to know that the prudent and proper thing for her to do under the circumstances disclosed by the evidence, was to accept the tendered hospitality and to remain until a more convenient way of reaching her destination, could be provided, her conduct might be justified upon that ground; but if she had sufficient judgment to have rightly guided her under the circumstances and failed to exercise it, or if she acted wilfully or perversely in the matter, she ought not to recover any damages occasioned by such conduct. It is the duty of an injured

9. party to use reasonable care not to enhance the damages occasioned by the wrongful act of another. In some of the cases the right of a person wrongfully discharged as a passenger to recover damages resulting directly from his subsequent conduct is made to depend upon the question as to whether or not he used due care to avoid enhancing the damages. *Indianapolis, etc., R. Co.* v. *Birney, supra; Cain* v. *Louisville, etc., R. Co., supra; Bader* v. *Southern Pac. R. Co.* (1900), 52 La. Ann. 1060, 27 South. 584. It matters not which rule is applied, the prac-

8. tical result is the same, but in either case, where the question is one of fact for the jury, the law by which the jury is to be controlled should be accurately and fairly stated. This brings us to a consideration of the instructions. In view of what has been said it is apparent that the court did not err in refusing to instruct the jury, as a matter of law, that appellee could not recover any damages which resulted on account of her walk after leaving Stone Bluff.

The first part of instruction No. 1, given at the request of appellee states the legal effect of the contract by which

appellant undertook to carry appellee from Lochiel to Coal Bluff and this part of the instruction is unobjectionable. The latter part of the instruction to which appellant objects reads as follows: "There is no contract pleaded in the complaint that the plaintiff should be carried from Lochiel to Stone Bluff, and there entertained over night, or over Sunday, or for any other length of time, in the house of the agent of the defendant company or of any other person of Stone Bluff no matter how comfortable the accommodations may have been nor how kindly or hospitably they were offered or urged." The part of the instruction quoted was unwarranted and was entirely out of place. So far as the record discloses there was no evidence and no argument which could authorize even an inference that appellant was claiming or relying upon any such contract as that mentioned by the court in the part of the instruction quoted. According to the theory of appellee, the contract for transportation was terminated by breach at the time she was wrongfully discharged from the train at Stone Bluff. The obligation, if any, to accept the hospitality tendered her instead of electing to pursue her journey on foot and alone, arose out of the conditions and circumstances in which she was placed after the contract was broken and by reason of such breach. She was under obligations to use such judgment and prudence to secure her own safety and comfort as might have been reasonably expected from a girl of her age, capacity and experience; and, if by the exercise of the judgment and prudence of which she was capable, she could have appreciated the situation and could have understood that the reasonable and prudent thing to do was to accept the hospitality tendered, it was her duty to accept them. The language we have quoted from this instruction could have no other effect upon the minds of the jurors than to convey the impression that appellee was under no duty or obligation to regard the tendered hospitality of the agent of appellant or to con-

sider it in determining what course she would pursue. Other instructions conveying the opposite impression would tend only to confuse the jury; and, as the instruction bears upon the most vital question in the case we can not say that it was not prejudicial to the rights of appellant. The statutes of this State require this court to disregard errors where it affirmatively appears from the record that the case has been fairly tried and determined on its merits and a just result reached by the trial court. The rule thus prescribed by statute does not apply to a case where the merits are doubtful and where it is by no means certain that a just result has been reached. *Magnuson* v. *State, ex rel.* (1895), 13 Ind. App. 303, 41 N. E. 545; *Kepler* v. *Conkling* (1883), 89 Ind. 392; *City of Lafayette* v. *Ashby* (1893), 8 Ind. App. 214, 34 N. E. 338, 35 N. E. 516.

After stating in instruction No. 3 that conduct of children of tender years is not to be measured by the same standard as the conduct of persons of mature years, the court in such instruction used the following language: "This is a reasonable and humane rule, and through all the branches of the law, whether contract or tort, there runs a line distinguishing children of years too few to have judgment or discretion, from those old enough to possess and exercise these faculties. This is a doctrine taught by every man's experience and sanctioned by the law." Appellant objects to the language quoted from this instruction for the reason that it does not contain a statement of any proposition of law, that it is argumentative in its nature, and that it purports to advise the jury as to the results of human experience. This language is open to the objection urged against it. *City of Columbus* v. *Strassner* (1894), 138 Ind. 301, 34 N. E. 5, 37 N. E. 719; *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 72 N. E. 1045; *Pittsburgh, etc., R. Co.* v. *O'Conner* (1909), 171 Ind. 686, 85 N. E. 969.

Appellee reached the home of her sister Maud Reeves in the afternoon of the day following the one on which

she got off the train at Stone Bluff. Mrs. Reeves and her husband were both called as witnesses in rebuttal, and, over a proper objection on behalf of appellant, they were each permitted to testify that after appellee reached their home, she told them in substance, that the brakeman of the train informed her when the train reached Stone Bluff that this was her station and that he told her to get off. The admission of this testimony was clearly erroneous. Her statements made at that time were self-serving declarations, and they constitute no part of the *res gestœ.* It appears that this evidence was admitted by the trial court upon the theory that the witness had been impeached by proof of statements made out of court inconsistent with her testimony at the trial, and that, for this reason it was proper to admit in evidence her statements made out of court which were consistent with her testimony, as tending to corroborate the witness and to sustain her credibility. Where there is an effort to impeach a witness in this way, such statements made out of court at or about the same time are admissible to sustain the witness. *Hicks* v. *State* (1905), 165 Ind. 440, 75 N. E. 641, and cases there cited. The record in this case, however, does not show that there was any attempt to impeach the appellee as a witness. It is true that some of the witnesses called by appellant testified that appellee had made statements out of court which, if made, were inconsistent with her testimony, but such statements were admissible against her by reason of the fact that she was a party. No impeaching question was put to appellee on her cross-examination, and the witnesses who testified to her statements out of court were permitted to give their own version of her statements. This amounted to nothing more than a mere contradiction of the witness. The fact that appellee was merely contradicted in this manner did not authorize the proof of her statements made out of court which tend to corroborate her testimony. *Logans-*

*port, etc., Turnpike Co.* v. *Heil* (1889), 118 Ind. 135, 20 N. E. 703; *State* v. *Hunt* (1894), 137 Ind. 537, 37 N. E. 409.

The judgment is reversed with directions to grant a new trial.

NOTE.—Reported in 105 N. E. 396. As to what injuries may be deemed the proximate result of discharging passengers at improper place or one not his destination, see 7 L. R. A. (N. S.) 1177. On the contract duty of carrier to stop at particular station, see 2 L. R. A. (N. S.) 505. As to what is deemed to be invasion by the court of jury's province, see 14 Am. St. 36. See, also, under (1, 4) 6 Cyc. 585; (2) 32 Cyc. 745; (3) 29 Cyc. 499; (5) 29 Cyc. 532, 505; (6) 29 Cyc. 600; (7, 8) 29 Cyc. 639; (9) 29 Cyc. 532; (10) 38 Cyc. 1612; (11) 38 Cyc. 1602, 1600; (12) 16 Cyc. 1202.