RIDGWAY *v.* YENNY.
RIDGWAY *v.* LOMBARDO.

[Nos. 28,041, 28,042.  Filed November 22, 1944.]

18

*Arthur W. Parry* and *Merl A. Barns,* of Ft. Wayne, for Appellant.

*Clarence R. McNabb* and *Sol Rothberg,* of Ft. Wayne, and *Bloom & Bloom,* of Columbia City, for Appellees.

FANSLER, J.—These are separate actions by the appellees against the appellant for damages because of injuries incurred in an automobile accident. The plaintiffs were guests of the appellant's decedent, and the action is controlled by § 47-1021, Burns' 1940 Replacement, § 11265, Baldwin's Supp. 1937, known as the "guest statute." Recovery against the estate is authorized by § 2-403, Burns' 1933 (Supp.), § 50, Baldwin's Supp. 1937, Acts 1937, p. 1341, which provides for the survival of the action for personal injuries and limits recovery to an amount not exceeding reasonable medical, hospital, or funeral expenses, and the sum of $1,000.

There is but little conflict in the evidence. From that most favorable to the appellees, it appears that Mr. Ridgway, who was about 65 years of age, met the appellees and another woman, all of whom were employees of a restaurant in the City of Fort Wayne, at a basketball game. Mr. Ridgway was a customer of the restaurant and well acquainted with the employees, although he had had no relations with them except in his capacity as a customer and theirs as employees of the restaurant. At the end of the basket-

ball game, which was at approximately 11 o'clock p. m., Mr. Ridgway invited the three restaurant employees to go with him in his car to a restaurant at the edge of the City of Fort Wayne to meet some friends of his, agreeing to return them to the place of their employment. They accepted his invitation, entered his car, and started on the journey. Miss Yenny occupied the front seat with Mr. Ridgway. The other two were in the rear seat. It was a bad night, rain and hail had fallen in the early evening and turned to sleet and then to snow. The streets and highways were slick and covered with sleet and snow. There was a wind blowing and a steady drop in the temperature. The car passed several other cars traveling in the same direction before reaching the city limits, and upon turning onto Maumee Avenue he almost collided with a car parked at the curb. All of the guests cautioned Mr. Ridgway about his driving, suggesting that it was a bad night and he should drive slowly and keep in his driving lane. None of the guests had ever ridden with Mr. Ridgway before, and none of them knew the location of the restaurant to which they were going. All were unfamiliar with the streets over which they traveled and with State Highway 30 on which they traveled outside the city limits. Mr. Ridgway increased his speed upon leaving the city limits and began to drive in and out of the three lanes of traffic on the highway. The car skidded once or twice, and they again asked him to slow down and to be careful and watch other cars. Frequently he headed diagonally across the road, and Miss Yenny grabbed the steering wheel on one occasion and straightened the car. He then stopped the car, with the right wheels on the berm and the left wheels on the pavement, and while thus stopped the guests remonstrated with him about his

speed and manner of driving. He started the car again and drove faster than before, again driving in and out of the three lanes of traffic. The guests again protested and cautioned him about oncoming cars and his speed and the danger of skidding on the icy pavement. He again headed the car off the road, and at the suggestion of one of the guests in the back seat, Miss Yenny straightened out the car as he stopped it. Ice and sleet had now formed on the windshield and the windows had become cloudy. Mr. Lombardo got out and endeavored to clean the windshield, but was not successful, and it was suggested that they leave the car and go to a place where they thought they saw some lights and call a cab. Miss Salyers suggested that Mr. Lombardo drive, but he said he did not have an Indiana driver's license. All of them told Mr. Ridgway that he had no right to jeopardize their lives and that they wanted to leave the car and call a cab. Mr. Ridgway did not agree. He said that it was no use to walk over where the lights were as no one was there. He told Mr. Lombardo to get in the car, that he did not want any back-seat driving, and that he could take care of the car himself, that there was only a little way to go and he would get them there safely. While the guests were yet protesting he put the car in motion and was gone. He began to drive even faster in and out of the lanes of traffic. He passed a "slow" sign and the guests called his attention to it. He paid no heed and increased his speed. After passing the crest of the hill his speed was again accelerated by the down grade. As they came to a left curve he drove far to the left of the lane for oncoming cars and almost sideswiped a truck. After passing this truck at between 35 and 40 miles an hour, the car continued in the lane of traffic and collided head-on

with a heavy tractor and semi-trailer. Mr. Ridgway was killed and the guests seriously injuried in the collision.

The actions are based upon a charge of wanton and wilful misconduct on the part of the driver.

Error is assigned upon the overruling of the motions for a new trial, which question the sufficiency of the evidence.

Under proper instructions the jury concluded that the driver was guilty of wanton and wilful misconduct, and it cannot be said that the evidence ■ is insufficient to support that conclusion. *Bedwell* v. *DeBolt* (1943), 221 Ind. 600, 50 N. E. (2d) 875.

It is contended that the evidence discloses that the guests assumed the risk, or, as it is sometimes said, incurred the risk. In so far as the facts at bar ■ require, the doctrine referred to may be stated as follows: "One who knows of a danger arising from the act or omission of another and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure." *White, etc.* v. *McVicker* (1933), 216 Iowa 90, 93, 246 N. W. 385, 386; *Pierce* v. *Clemens* (1943), 113 Ind. App. 65, 46 N. E. (2d) 836; *Edwards, Admr.* v. *Kirk* (1939), 227 Iowa 684, 288 N. W. 875. The incurring of the risk must be really voluntary. If the continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary. *Edwards* v. *Kirk, supra,* and cases cited. The

burden of establishing the assumption of the risk is upon the defendant. There is no controversy concerning these principles, but much contention as to their proper application to the facts. But we think that the question was properly submitted to the jury and that the decision of the jury must stand. If it be assumed that the guests had knowledge that the danger would continue, there is still to be considered the question of whether there was a reasonable opportunity to abandon the journey and avoid the dangers; whether reasonable minds might differ upon the advisability of taking the risk involved rather than be subjected to other, perhaps equal or greater, dangers.

Continuing to ride as a guest in a deep and dangerous fog, the continuance of which must be anticipated, or in a defective car, such as one without lights, after a reasonable opportunity to abandon the journey, or to continue to ride with an obviously drunken driver, have been suggested in the decisions as sufficient to charge the guest with having assumed or incurred the risk involved in the venture. Under such circumstances it can be reasonably assumed that the risks will continue unabated. There are cases, however, in which it need not be assumed that the risk will continue. When protests against driving at an excessive rate of speed under dangerous conditions result in stopping the car and indications of a willingness to drive more carefully, it cannot be said that the guest must anticipate a resumption of the dangerous driving.

Here the parties were in an unfamiliar neighborhood, where they were informed there was no opportunity to acquire other transportation. The weather was most inclement, they were a considerable distance from familiar surroundings,

and it may be assumed that conditions made it dangerous to attempt to proceed on foot. The temperature had been falling steadily, and all of the guests were clothed in their ordinary garments, which were not adequate to protect them from exposure to the weather. These are facts which the jury might, and probably did, give consideration. If there had been opportunity to abandon the journey at some point which provided shelter and an opportunity to procure another conveyance to the city, the jury might have concluded that the guests had assumed or incurred the risk by continuing. But such is not the case. They were not required to abandon the journey because of the danger that the driver would not heed their admonitions to proceed more carefully, when it involved exposure to other and perhaps greater risks. There may be cases in which it can be said as a matter of law that a guest, with full appreciation of the dangers involved, has voluntarily and willingly taken the risk because of refusal to take advantage of a reasonable and safe opportunity to abandon the journey. But if reasonable men might disagree upon the question, it must be left to the determination of the jury.

The surgeon who attend Miss Yenny testified as to the care of her injuries and her treatment. His diagnosis was made in part with the aid of X-ray pictures made under his direction. Objection was made to his testimony upon the ground that the X-ray pictures were not in court; that they were the best evidence of what they disclosed, and that they were not available for use in cross-examination. The overruling of this objection is assigned as error, but we find it unnecessary to consider the merits of the question. It is clear beyond controversy that she was hospitalized for approximately six months, that she

was unable to work for a year, that lacerations upon her face and eyelid required plastic surgery so that the eyelid would function, that she was unconscious for a week after the accident, that she suffered greatly while in the hospital, and at the time of the trial was still suffering from dizziness and headaches, and the doctor testified that these pains would continue for perhaps a long time. Two ribs were fractured and the ends displaced. There were two other fractures. The undisputed evidence shows that she was most seriously injured, and that no examination of the X-ray pictures, or cross-examination based upon them, could conceivably have reduced the jury's impression of her sufferings and injuries to such an extent as to have justified a verdict for less than the $1,000.00 to which recovery was limited by the statute. If there was error in this respect, the defendant was not prejudiced thereby. *Eckart* v. *Ft. Wayne, etc., Traction Co.* (1914), 181 Ind. 352, 104 N. E. 762.

Error is assigned upon the giving of a mandatory instruction which the appellant contends "entirely omitted the element or issue of contributory acts of wanton or wilful misconduct on her own part." But there is no evidence of any wanton or wilful misconduct on the part of Miss Yenny, and the jury would not have been justified in denying her recovery upon that ground. The appellant asserts that the driver "had been subjected by his guests to an almost continuous round of that annoying, irritating and dangerous practice known as 'back-seat driving' advice, warnings, protests, exclamations and even some screams; and that on two occasions, at least, after reaching the highway . . . the appellee herself" grabbed the wheel. On the occasions when Miss Yenny grabbed the wheel, it resulted not in injury, but in bringing

the car to the edge of the road and stopping it at a place of safety. The warnings of danger and supplications to desist from reckless driving methods were not wanton or wilful misconduct. They did not contribute to the injury, but rather a failure to heed these warnings brought about the injury. Assuming that the question of contributory wanton and wilful misconduct on the part of the plaintiff was in issue under the pleadings as a defense, the burden of establishing it was upon the defendant. There was no evidence tending to establish such a defense, and a peremptory instruction upon the subject would have been proper.

The judgment in No. 28,042 provides that it shall bear interest at the rate of 6 per cent per annum. The appellant sought to have it modified upon the theory that the only authority for the allowance of interest on a claim against an estate is contained in § 6-1016, Burns' 1933, § 3134, Baldwin's 1934, which provides for interest upon the allowing of a claim, "if allowed by the provisions of this act." The provision referred to is part of the general law providing for the filing of claims against estates, and applies therefore to any claims filed under that statute. The survival statute, § 2-403, Burns' 1933 (Supp.), § 50, Baldwin's Supp. 1937, *supra*, provides that "in event the action be brought subsequent to the death of the party against whom the cause existed, then the same shall be prosecuted as other claims against said decedent's estate." It was clearly the legislative intention that the procedure and rules governing actions and judgments in the case of claims generally against estates should apply.

We find no error.

Judgments affirmed.

Note.—Reported in 57 N. E. (2d) 581.