YINGST, SPECIAL ADMINISTRATOR ETC. *v*. PRATT.

[No. 20,134. Filed October 6, 1966. Rehearing denied December 7, 1966.]

*Albert C. Harker* and *Harker, Kiley & Osborn,* of Marion, for appellant.

*Robert A. Foust,* of Marion, for appellee.

WICKENS, P.J.—Damages were awarded for personal injuries to plaintiff-appellee after a jury trial.

The alleged tort-feasor passed away prior to the trial and appellant is the personal representative of the estate of the original defendant below.

An amended complaint and an answer in two paragraphs constituted the trial issue. It was alleged in the amended complaint that plaintiff-appellee's personal injuries were the sole proximate result of the decedent's conduct during an armed robbery.

The motion for new trial asserts that the verdict of the jury was not sustained by sufficient evidence and that it is contrary to law; that the trial court erred in overruling defendant's motion, made at the close of plaintiff's evidence, to instruct the jury to return a verdict for the defendant; and the trial court erred in overruling defendant's motion, made at the close of all the evidence, to instruct the jury to return a verdict for the defendant.

We take the evidence directly from appellee's condensed recital thereof so that it may be clear that we are considering only that evidence most favorable to appellee. It also bears out that there was no dispute or conflict therein as we understand those terms. Decedent, Jennings B. Fudge, was the owner of Fudge's Tavern and he was operating it about midnight of the time in question.

"On June 29, 1956, Merchie Pratt, his wife and friends were patrons of Fudgie's Tavern at 309 North Butler Avenue, Marion, Indiana, and were seated at a table just inside the entrance to the tavern near the door. Several other patrons were also seated in the tavern. A man entered the tavern armed with a loaded, cocked revolver and announced he was holding up the tavern and told everyone not to move.

The robber then walked to the east end of the bar and handed the tavern owner, Jennings B. Fudge, a sack and directed him to put the money in it. Fudge walked some 12 feet back to the cash register, opened it and placed the money therein into the sack; the robber further directed Fudge to go to a cigar box and empty the money from it into the sack; Fudge then went to the cigar box and placed the money from the box into the sack: Fudge was not in any hurry while doing this. Fudge then walked back to the east end of the bar, near the opening from behind the bar, and handed the sack of money towards the robber. The robber was standing at the end of the bar with his revolver pointed at Fudge at this time. As the robber reached for the sack, Fudge grabbed the robber's gun or gun hand and they scuffled and fell to the floor during which scuffle several shots were fired from the gun and at least one other person hit by one of the bullets. Fudge and the robber grappled and rolled on the floor over to Pratt's table. At this time the gun was still firing and Fudge did not have control of the robber or his gun. Tables were being upset, patrons screaming. When Fudge and the robber rolled against Pratt's table, Pratt, to protect himself and his wife, jumped down on the robber's gun hand and thereafter was also shot. The fight continued briefly until another patron hit the robber on the head with a bottle, knocking him unconscious."

Appellant contends that the decision is contrary to law and not sustained by sufficient evidence because plaintiff did not establish that Fudge owed a duty of care to Pratt under the facts, and did not show that Fudge breached said duty. This was also consistent with the issues. As a part of defendant-appellant's special answer it was alleged that decedent "did not wilfully and intentionally do any act with the intent of causing harm to any of the patrons of his tavern, but did act intentionally to protect and preserve his person and property and acted in self defense by so doing."

The parties in their briefs appear to agree that the abstract legal principles which would usually apply to actionable tort where a tavern patron was injured on the tavern premises can be stated that Pratt was a business visitor in the Fudge's tavern on the night in question and:

"Fudge was bound to protect Pratt while in the tavern against injury at the hands of third persons whether they were guests or strangers where it was in his power to do so. . . . Yet as the proprietor of a place of business, Fudge was not the insurer of Pratt against personal injuries afflicted by other persons on the premises. . . . Fudge was liable only for his negligence, and he was not liable for the wrongful or negligent acts of third persons not under his control which he could not reasonably have anticipated and guarded against."

Basically the issues were fairly tried on the factual premises and the legal maxims which we have mentioned. There appears no error in the record unless as urged by appellant, this is a case in which the usual legal principles do not pertain. In such event the decision could be contrary to law because it is then contrary to the principles of law governing the particular set of facts evolving in this matter.

In the law of torts there are recognized terms of "privilege," "justification," and "excuse." These denote circumstances under which what might have been actionable wrong is excused or justified or the wrongdoer is held privileged, hence no liability occurs. Prosser, Torts, §§ 16, 19, 24, pp. 99, 110, 127 and 128 (3rd Ed. 1964) ; Bohlen, Incomplete Privilege to Inflict Intentional Invasions of Interests of Property and Personality, 39 Harv. L. Rev. 307 (1926) ; Beale, Justification for Injury, 41 Harv. L. Rev. 553 (1928).

"An act causing damage to another does not create liability where the person doing the act has a legal excuse or justification therefor." 52 Am. Jur., Torts, § 85, pp. 432, 433.

Such privilege, excuse or justification can be found in the authorities under self-defense and under the heading of necessity but the underlying principle most frequently fathering the immunity is that where the defendant furthers an interest of community social importance he is entitled to protection.

As said by Prosser, *supra*, on p. 128 :

"The 'champion of the public' is not required to pay out of his own pocket for the general salvation."

In describing what he calls an "incomplete privilege" Bohlen, *supra,* says at p. 319 that the privilege becomes complete ". . . where the actor destroyed personal property for the protection of the public interest, or for the protection of others than himself as well as of himself, and when therefore it may well appear unfair to make him bear the entire burden of the loss which he causes."

Exhibiting the public interest feature of excuse, privilege or justification, in his treatise on "Justification" Beale, *supra,* says at p. 557:

"For instance, a private person may, if a felony has been actually committed, arrest a person on reasonable suspicion for the commission of the felony, and in case of the felon's escaping may prevent his escape even by killing if the felony was one of violence; and he may also interfere with such violence as is necessary to prevent the commission of the felony."

The American Law Institute in Restatement has treated with this subject under "Justification or Excuse." It is recognized there that in "cases where the interests of the public are overwhelming, the purpose of the actor is immaterial." Restatement, Torts, § 890 p. 479.

In its search for a legal analysis of justification as affected by public interest the American Law Institute also says:

"(2) The use of force or the imposition of a confinement intended or likely to cause death or serious bodily harm is privileged if the actor reasonably believes that the commission or consummation of the felony cannot otherwise be prevented. . . ." Restatement, Second, Torts, § 143, P. 257.

The Institute further expressly includes the crime of robbery among those which excuse the use of means intended or likely to cause death. Restatement, Second, Torts, § 143, Comment b, p. 258.

There is, and must continue to be, a great public interest in the prevention of crime and in the speedy apprehension of criminals. To that end the victim of a crime, as vicious ██ as armed robbery, during the course of such criminal act, is excused, justified and to be held privileged from ordinary resistance which might otherwise cause actionable damage. He should be chargeable with no greater legal duty to use care for the protection of others than he, in the emergency, has seen fit to use to protect himself.

We are not required in this case to determine whether an actor under the same circumstances would be excused if he had used a shot gun or machine gun, greatly increasing ██ the danger to his business guests. The amount of force applied by Fudge leaves a grave question of foreseeability. That same minimal force considered with the emergency nature of his problem might, of itself, excuse his action as neither foreseeable nor constituting the natural consequences of his act. As in self-defense (to which justification here is related) the force employed must not be out of proportion to the apparent urgency of the occasion.

A noted author has said of self-defense:

> "To repel force by force is the common instinct of every creature that has means of defense. And when the original force is unlawful, this natural right or power of man is allowed, nay approved by the law. Sudden and strong resistence to unrighteous attack is not merely to be tolerated; in many cases it is a moral duty. . . . The law sets bounds to it by the rule that the force employed must not be out of proportion to the apparent urgency of the occasion." Pollock, The Law of Torts, pp. 172, 173 (12th Ed. 1923).

Since the time of Blackstone, a private person has been exhorted by law to help prevent crime. Then it was said that a private citizen was "bound by the law to arrest the felon, on pain of fine and imprisonment, if he escapes through the negligence of the standersby." Blackstone, Commentaries on the Laws of England, p. 999 (3rd Ed. Chase 1877).

"It is the right and duty of a private person to apprehend one who has committed a felony in his presence, either at the time of its commission or upon immediate pursuit." 5 Am. Jur. 2d, Arrest, § 35, p. 727.

Our Supreme Court has even approved an instruction that a private citizen had the right, and it was his duty, to use force to prevent robbery, or even to prevent the escape of any robbers. *Burns* v. *State* (1922), 192 Ind. 427, 438, 136 N. E. 857.

In our considered opinion the actions of decedent in ■ the manner and under the circumstances herein related in repelling a robber are justified, excused, and privileged.

We therefore find that the decision of the trial court is contrary to the principles of law applicable to the particular case and must be and is therefore reversed. The error being one of law in failing to sustain the motion for directed verdict at the close of all evidence, the trial court is now directed to enter judgment for the defendant.

Smith, C.J., Bierly, Hunter and Prime, JJ., concur.

Faulconer, J., dissents with opinion in which Carson and Mote, JJ., concur.

### DISSENT

FAULCONER, J.—I am unable to agree with the views expressed in the majority opinion of this court.

The appellee (plaintiff below) brought this action against Jennings B. Fudge, d/b/a Fudge's Tavern, to recover damages for personal injuries sustained by appellee in the course of an armed robbery of a tavern owned and operated by Jennings B. Fudge.

After the filing of the complaint for personal injuries and before the conclusion of the trial, Jennings B. Fudge died and, thereafter, George R. Yingst was appointed Special Administrator of decedent's estate and substituted as party-defendant in the trial of the case.

The issues were formed by appellee's amended complaint, the appellant's answer in two paragraphs, and appellee's reply to appellant's second paragraph of answer.

Appellee alleged in his amended complaint that he suffered personal injuries as "a sole, proximate result" of decedent-Fudge's conduct during the armed robbery of decedent's tavern while appellee was a patron there.

Appellant, in the first paragraph of answer, denied certain allegations of appellee's amended complaint; and in the second paragraph of answer contended that appellant's decedent had acted in self-defense "to protect and preserve his person and property," and that appellee had voluntarily entered the altercation thereby incurring the risk of his injuries and contributing to his own injury.

Appellee, in his reply to the answer to the amended complaint, denied all the averments contained therein with the exception of the admission of the "struggle" with the armed robber.

Trial was by jury which returned a verdict for appellee, and judgment was duly entered thereon by the trial court.

Appellant's motion for new trial, timely filed, was overruled, and this appeal was taken.

The motion for new trial asserts that the verdict of the jury is not sustained by sufficient evidence and is contrary to law; that the trial court erred in overruling defendant's motion, made at the close of plaintiff's evidence, to instruct the jury to return a verdict for the defendant; and that the trial court erred in overruling defendant's motion, made at the close of all the evidence, to instruct the jury to return a verdict for the defendant.

Appellant argues generally that the evidence fails to establish actionable negligence in that it does not show appellant's decedent owed appellee a duty; that if appellant owed such duty, he failed to perform it; and that such breach, if any, was not the proximate cause of appellee's injuries. Appellant

further contends that, on the contrary, the evidence proved that appellant's decedent acted lawfully and reasonably in defense of his life and property and that of his patrons; that appellee's injuries were caused by the voluntary "injection" of himself into the fracas between appellant's decedent and the armed robber; that appellee was guilty of contributory negligence as a matter of law; and that appellee, by his acts, assumed the risk of his injury.

The essential elements of actionable negligence are succinctly stated in *Faris* v. *Hoberg et al.* (1893), 134 Ind. 269, at pages 274-275, 33 N. E. 1028, as follows:

> "In every case involving actionable negligence, there are necessarily three elements essential to its existence: 1. The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; 2. A failure by the defendant to perform that duty; and, 3. An injury to the plaintiff from such failure of the defendant.
>
> "When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient.
>
> "As a question of evidence, the facts are given to the jury, and if there is no evidence whatever as to one of the three elements, then, as a question of law, the plaintiff has failed, and the court may direct a verdict for the defendant." See also: *Elder, Receiver* v. *Rutledge, Admx.* (1940), 217 Ind. 459, 464, 27 N. E. 2d 358; *Neal, Admr.* v. *Home Builders, Inc.* (1953), 232 Ind. 160, 167-168, 111 N. E. 2d 280, 111 N. E. 2d 713.

There is no dispute concerning appellee's status. He was a business invitee. He was a patron in decedent-Fudge's tavern. Appellant's decedent, therefore, owed appellee the duty of exercising reasonable care for appellee's safety. *Robertson Bros. Dept. Store* v. *Stanley* (1950), 228 Ind. 372, 378, 90 N. E. 2d 809; *Silvestro* v. *Walz,* (1944), 222 Ind. 163, 170, 51 N. E. 2d 629.

I am of the opinion that the evidence in the record proves all the elements of actionable negligence and, therefore, supports the verdict of the jury.

The evidence most favorable to appellee shows that appellee, with his wife and a friend, entered decedent's tavern and seated themselves with another couple at a table near the door "[a]t the end of the bar and two, three feet to the left," and that such table was about even with the east end of the bar and six to eight feet from the entrance. That "not over five minutes" after they were seated a man entered the tavern with a "stocking over his face" holding a gun and stated, "This is a stick-up." He proceeded to the east end of the bar, gave decedent—who was standing behind the bar—a sack and told him to "[p]ut the money in it." That decedent walked to the cash register in the middle of the bar, filled the sack with money, and carried it back to where the robber was standing; that when the decedent handed the sack of money to the robber he (decedent) "grabbed for the gun"; and that when decedent "jumped" the robber they fell toward the door and "almost immediately the shooting started."

The evidence concerning the events which followed consists of several versions on the issue of when appellee entered the fracas.

Appellee testified, on direct examination, that when the fight started he (appellee) was at the table three feet away; that decedent and the robber fell to the floor and to the east; and that "they scuffled over toward us." Appellee also testified that the table had been overturned. On cross-examination appellee testified that "[a]fter they were on the floor, after there were two shots, I decided to protect myself and my wife, also."

Appellee's wife, Mary Jane Pratt, testifying on behalf of appellee, stated that she was seated with appellee at the table; that the decedent grabbed the robber; that "[t]hey started fighting and scuffling. The next thing I [the witness] remember, they were on the floor right by our table. The gun was shooting."

Mrs. Ollie Buskirk, a witness for plaintiff-appellee, also testified that she was seated at the table with appellee and

his wife; that during the scuffle between the decedent and the robber "they landed, more or less, right at the end of our table" when appellee grabbed for the robber.

I am of the opinion that under the circumstances and the evidence in this cause, whether or not the actions of decedent were those of a person using reasonable care for appellee's safety, and whether or not there was a breach of duty, were questions properly for the determination of the jury.

Appellant argues that even if there is evidence showing a duty on decedent to appellee and a breach thereof, there is no showing that such breach was the proximate cause of appellee's injuries.

Although these specific facts have not heretofore been before this court, several Indiana decisions provide us with some general guidelines.

Our Supreme Court in *Neal, Admr.* v. *Home Builders, Inc., supra* (1953), 232 Ind. 160, at page 167, 111 N. E. 2d 280, quoted with approval from 65 C.J.S., Negligence, § 63, p. 554, that:

> " 'One who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.' "

In order to recover it was necessary that appellee prove, not only that the conduct of appellant's decedent in attempting to prevent the hold-up was a breach of duty he owed appellee as his patron, but that this breach of duty was the proximate cause of appellee's injuries.

> "The Indiana courts regard foreseeability of injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated." 21 I.L.E., Negligence, § 65, p. 325. *Swanson* v. *Slagal, Administratrix*

(1937), 212 Ind. 394, 413, 414, 8 N. E. 2d 993; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 603-604, 106 N. E. 2d 242. "Generally, where harmful consequences are brought about by intervening and independent forces, the operation of which might have been reasonably foreseen, then the chain of causation extending from the original wrongful act to the injury is not broken by the intervening and independent forces, and the original wrongful act will be treated as a proximate cause; . . . ." 21 I.L.E., Negligence, § 67, p. 332. *Northern Ind. Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 176-177, 89 N. E. 2d 905, 17 A.L.R. 2d 572; *Chicago, etc. R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 358-359, 105 N. E. 396; *Leatherman* v. *Gateway Transportation Company* (7th Cir., 1964), 331 F. 2d 241, 243.

As stated above, it is uncertain from the evidence in the record before us, exactly what action was taken by appellee after the fracas between appellant's decedent and the armed robber began, nor can it be determined exactly when the action was taken. I do not believe that it can be determined from the evidence whether appellee became involved as a Good Samaritan and "rescuer" of one in peril, or acted in defense of himself and his wife. Therefore, these issues were to be determined by the jury under proper instructions. There is evidence from which the jury could find that appellee entered the fracas only when decedent and the robber reached the table at which appellee and his wife and their friends were seated. That appellee refrained from becoming involved until absolutely necessary is evidenced by his refusal to join with a friend seated with him urging him to attack the robber standing at the bar prior to the beginning of the fracas between decedent and the robber.

I am of the opinion that the evidence supports the finding by the jury that appellant's decedent could have reasonably foreseen that appellee, seated approximately three feet from the robber at the time decedent attacked the armed robber, could become involved in, or injured during, a fracas between decedent and the armed robber. It is certainly not an unreasonable assumption, under the circumstances here, that appellee

would not sit idly by and watch not only the decedent be over-come and possibly killed, but appellee' life and those of his wife and friends threatened with grave bodily injury or death.

In this regard appellant relies upon decisions from other jurisdictions, and chiefly upon *Helms* v. *Harris* (Tex. Civ. App., 1955), 281 S. W. 2d 770. The *Helms* case is clearly dis-tinguishable from the one presently before us. The Court of Civil Appeals of Texas, after setting forth the contention re-lied upon by appellant therein, at page 771, stated:

"In the first place, the plaintiff sustained no injury as result of the defendant's resistance of the robbery. . . .

"In the second place, under the agreed statement of facts, the injury that the plaintiff did sustain was inflicted upon her intentionally by the bandit for causes unrelated to de-fendant's resistance to him. . . ."

Here, appellant's decedent knew that the robber was armed prior to attacking him; knew that there were patrons in his tavern; knew appellee was in close proximity to where the robber stood and, under these circumstances, attempted to take a gun from the robber and subdue him.

In my opinion, it cannot be said that the evidence produced does not support the findings of the jury, by their general ver-dict, that decedent owed a duty to appellee as an invitee, that he failed to perform that duty and that the breach of duty was the proximate cause of appellee's injuries. The questions of the reasonableness of decedent's actions in attacking the armed robber and that of foreseeability were questions of fact for the jury's determination.

Appellant urges that appellee, "knowing the inherent risk of physical harm in the situation, voluntarily elected to en-counter it and entered into the situation involving obvious danger when he dived into the fight in which a pistol was blazing. When he so acted, he assumed, or incurred, any risk of injury; and he can not now recover damage for injuries sustained as a result." Appellant further contends that appel-

lee's "own disregard for his personal safety in jumping into the violent struggle between Fudge [appellant's decedent] and the armed robber constitutes negligence that contributed to his own injury and, therefore, precludes recovery by him for harm suffered as a result."

Appellant alleged in Paragraph II of his answer to appellee's amended complaint that appellee was contributorily negligent and assumed the risk. Acts 1959, ch. 63, § 1, p. 130, § 2-1025, Burns' 1965 Cum. Supp., makes contributory negligence a defense in actions for damages brought on account of alleged negligence. The burden of proving contributory negligence is placed upon the defendant by this statute. *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 556, 114 N. E. 2d 873; 21 I.L.E., Negligence, § 165, p. 405.

The burden of proving incurred or assumed risk is also upon the defendant when sued "for personal injuries." *Ridgway* v. *Yenny; Ridgway* v. *Lombardo* (1944), 223 Ind. 16, 22-23, 57 N. E. 2d 581; *Pittsburgh, etc., R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 440, 107 N. E. 315; 21 I.L.E., Negligence, § 165, p. 406.

By its general verdict the jury found against the appellant upon these issues and, therefore, the finding being negative to appellant who had the burden of proof, he cannot challenge the insufficiency of the evidence to sustain them on appeal. *State Farm Life Insurance Co.* v. *Spidel* (1964), 246 Ind. 458, 202 N. E. 2d 886, 888; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 528-529, 104 N. E. 2d 669.

"If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law. To determine this question we may consider only the evidence most favorable to the appellees, together with all reasonable inferences which may be drawn therefrom." *Hinds, Executor Etc.* v. *McNair, et al.* (1956), 235 Ind. 34, 41, 129 N. E. 2d 553.

A person assumes a risk, thus precluding that person from recovering for an injury which results from the exposure,

when that person knowns of a danger arising from the act or omission of another and understands the risk therefrom, and voluntarily exposes himself to it.

In *Ridgway* v. *Yenny; Ridgway* v. *Lombardo, supra* (1944), 223 Ind. 16, at page 22, page 583 of 57 N. E. 2d our Supreme Court said:

> "The incurring of the risk must be really voluntary. If the continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if continuance of exposure to the danger is the result of influence, circumstances, or surroundings, which are a real inducement to continue, the doctrine does not apply, since the exposure is not in a true sense voluntary."

The evidence produced in this cause surrounding appellee's actions, referred to above, prevents this court from holding, as a matter of law, that appellee's actions showed contributory negligence on his part or that he assumed the risk as that doctrine is defined in Indiana. Under this evidence it cannot be said that it undisputedly shows appellee was a volunteer. There is evidence to sustain a finding that appellee was forced to enter the fracas in defense of himself, his wife and friends. Therefore, the findings on these issues by the general verdict are not contrary to law.

> "It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co., supra* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669; *Strasser et al.* v. *Powell et al.* (1961), 131 Ind. App. 508, 513, 172 N. E. 2d 439.

Appellant lastly claims error in the refusal of the trial court to direct a verdict in his favor at the close of plaintiff-appellee's evidence, and again at the close of all the evidence.

I do not deem it necessary to lengthen this dissenting opinion by a re-discussion of the evidence which I feel amply sup-

ported the action of the trial court in these matters. Such pertinent evidence in regard to other issues which I believe can equally apply to each of the motions for directed verdict has been discussed.

Even under the highly commendable goal of "preventing crime," upon which the majority opinion seems to base its reversal, whether or not the actions taken would be those of a reasonable man under like circumstances is a question for the jury whose general verdict is reversible only where the evidence is undisputed and unconflicting which—although treated as such by the majority opinion—is not the situation here as shown by the record before us.

I would affirm the judgment of the trial court.

Carson, J. and Mote, J., concur.

NOTE.—Reported in 220 N. E. 2d 276.