**ST. MARY'S BYZANTINE CHURCH,**
Appellant (Defendant Below)

v.

**Michael MANTICH and Marie Mantich,**
**Appellees (Plaintiffs Below).**

No. 37A03–8604–CV–122.

Court of Appeals of Indiana,
Third District.

March 30, 1987.
Rehearing Denied May 7, 1987.

David C. Jensen, John M. McCrum, Eichhorn, Eichhorn and Link, Hammond, for appellant.

David E. Wickland, Munster, for appellees.

HOFFMAN, Judge.

St. Mary's Byzantine Church is appealing from an adverse judgment rendered in favor of the plaintiff-appellee Marie Mantich. This personal injury action was heard by a jury, which awarded Mrs. Mantich $75,-000.00. There is no significant dispute over the facts which are simply stated.

Mrs. Mantich had been an active member of St. Mary's for many years, attending the church nearly every day. Over the last 15 years, Mrs. Mantich had volunteered to prepare meals for church functions, perhaps 40 or 50 times. The church kitchen, where Mrs. Mantich cooked the meals was adjoined by a storeroom. Access to this storeroom was gained by walking up a ramp which had been constructed to facilitate moving wheeled carts between the two rooms.

On the Sunday before August 5, 1980 Mrs. Mantich was asked to help prepare a meal for a church function. Accordingly, on the 5th of August, she and several other church members spent the morning cooking in the kitchen. While completing the

preparations Mrs. Mantich started up the ramp. She took a couple of steps, tripped and fell hard. As a consequence she suffered serious injuries including some permanent impairment.

Undisputed testimony, from Mrs. Mantich's experts, established that the ramp was constructed in violation of state building codes. The ramp had a slope of 1 inch of vertical rise for every 5.8 inches of horizontal distance. The experts testified that a ramp such as this could only be properly constructed with no more than 1 inch of rise for every 8 horizontal inches.

Mrs. Mantich testified that she did not trip over her own feet, and that there were no obstructions, nor any grease on the ramp's rubberized surface. Instead, Mrs. Mantich asserted that she fell simply because the ramp was too steep. She also testified that during her 15 years of cooking meals at the church she had used the ramp hundreds of times, and that she had always been aware that the ramp was dangerously steep. Mrs. Mantich testified further that she had previously seen a man fall on the ramp and that she had long been afraid of the ramp, but she did not think she would fall, because of her strong religious faith.

St. Mary's moved for judgment on the evidence after Mrs. Mantich's presentation and again at the close of all the evidence. St. Mary's argued that the evidence conclusively proved its defenses of contributory negligence and incurred risk. The trial court denied the motions and the jury ultimately awarded Mrs. Mantich $75,000.00. On appeal St. Mary's raises three issues; however, it is only necessary to discuss two of these, which are:

(1) whether the trial court's limiting instruction on incurred risk was supported by the evidence; and

(2) whether the trial court improperly failed to grant St. Mary's motion for judgment on the evidence.

■ As part of its final instructions, the trial court gave a number of instructions on incurred risk. Among these was the Court's Final Instruction No. 21, which read:

"The doctrine of assumed risk does not apply if a continued exposure to a known risk of injury is due to a lack of reasonable opportunity to escape after the danger is appreciated, or if the continuance of exposure to the danger is a result of influence, circumstances, or surroundings which are a real inducement to continue."

This language is essentially quoted from *Ridgway v. Yenny; Ridgway v. Lombardo* (1944), 223 Ind. 16, 57 N.E.2d 581 which explains that before one can be held to have legally incurred a risk, the risk must be voluntarily undertaken. There is no dispute that the above instruction is a correct statement of law; however, it is well settled that a proper instruction must not only correctly state the law, it must also be supported by the evidence. *See, e.g., Shull v. B.F. Goodrich Co.* (1985), Ind.App., 477 N.E.2d 924.

On this issue, St. Mary's argues that the record contains no evidence indicating that Mrs. Mantich's use of the ramp for 15 years, as part of her church activities, was anything other than voluntary. Mrs. Mantich counters that her faith and her dedication to the church constituted circumstances that were a real inducement for her to continue to use the ramp. Application of the pertinent case law to the facts of this case demonstrates that the evidence does not support the instruction.

The case law regarding what events or circumstances provide sufficient justification for a person to undertake an activity without legally incurring its risks is fairly sparse. In *Ridgway, supra,* the Supreme Court found no incurred risk when the plaintiff failed to abandon a car being driven erratically, where the weather was inclement and the terrain was unfamiliar. In *Coleman et ux. v. DeMoss* (1969), 144 Ind. App. 408, 246 N.E.2d 483, the Court of Appeals found sufficient evidence of inducement to preclude finding incurred risk, as a matter of law, where the plaintiff-tenant continued to cross a dangerous ditch from her parking spot designated by the landlord to her house, where an alternate route was much longer and required cross-

ing a busy street. Again, in *Meadowlark Farms, Inc. v. Warken* (1978), 176 Ind. App. 437, 376 N.E.2d 122, the Court found sufficient evidence of inducing circumstances where the injured plaintiff was contractually obligated to deliver his grain to defendant, and to use defendant's machinery that ultimately proved unreasonably dangerous. While these cases involve seemingly disparate situations, a single, harmonizing principle is apparent.

In each of these cases there were strong, external compelling circumstances that induced the parties to continue their dangerous activities. In each case the injured parties had alternatives, which if chosen would have avoided the specific harm that befell them; however, these alternatives were themselves fraught with their own perils. In *Ridgway* there was the danger of being stranded in bad weather. In *Coleman* there was a longer walk across a dangerous street, and in *Meadowlark Farms*, adopting the alternative would have breached the contract.

Mrs. Mantich's situation is entirely different. Her strong religious faith and dedication to the church were undoubtedly very real and powerful personal inducements for her to continue, for 15 years, using a ramp that she knew was dangerous. However, Mrs. Mantich's alternative courses of action, such as having another volunteer retrieve supplies from the storeroom, or even not volunteering to cook at all, did not subject her to additional physical danger nor to unacceptable legal consequences. Moreover, the inducements compelling Mrs. Mantich, while socially important, are not of the sort that should lift responsibility for one's acceptance of a known and appreciated risk, and place it on another. Accordingly there was no evidence to support the Court's Final Instruction No. 21 and it was improperly read to the jury.

St. Mary's second issue regards the denial of its motion for judgment on the evidence. As previously stated, St. Mary's moved for judgment on the evidence at the close of Mrs. Mantich's case and again at the close of all the evidence. In both in-

stances St. Mary's based its motion on a claim that the evidence proved that Mrs. Mantich was either contributorily negligent, or that she had incurred the risk.

In general, a directed verdict, or a motion for judgment on the evidence, under Ind. Rules of Procedure, Trial Rule 50, should be a rarely used procedural device. It should never be granted lightly or for the sake of mere judicial economy. *Cummings, Admx. v. Hoosier Marine et al.* (1977), 173 Ind.App. 372, 363 N.E.2d 1266. A motion for judgment on the evidence should only be granted when there is insufficient evidence on an essential element of the case or where a defense to the action is proved by the evidence. *See, e.g., Green v. Karol* (1976), 168 Ind.App. 467, 344 N.E.2d 106. More specific to the present case,

"[w]here the evidence on the question of assumed or incurred risk presents an issue of fact, that issue is for the jury, but where there is no real dispute in the evidence bearing on that question, it is for the court to say as a matter of law that the plaintiff assumed or incurred that risk." *Pierce v. Clemens* (1943), 113 Ind.App. 65, 77, 46 N.E.2d 836, 841.

Incurred risk has been generally defined as "the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances.... Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge." *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243 (emphasis in original). Actual knowledge is the prerequisite element of incurred risk, and therefore the trial court must employ a subjective analysis to determine whether the actor actually knew of and voluntarily accepted the risk. *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552.

In the present case Mrs. Mantich's actual knowledge of the specific risk that befell her is absolutely clear. She testified that she had long been afraid of the ramp, because it was too steep. She also testified that she had previously seen a man fall on the ramp. In response to this testimony, Mrs. Mantich stated that she only "thought" the ramp was too steep. On appeal Mrs. Mantich argues that she could

not have "known" that the ramp was too steep, because she never measured it and was unaware that the ramp did not comply with the building codes. These semantic arguments do not overcome the unequivocal evidence of actual knowledge and appreciation.

It is immaterial that Mrs. Mantich had never measured the ramp. The fact that the ramp was improperly designed, has nothing to do with Mrs. Mantich's appreciation of the risk. Logically, non-compliance with state building codes is possibly competent evidence establishing negligence, but awareness of the non-compliance is not necessary for a subjective appreciation that a ramp is too steep.

The evidence clearly establishes that Mrs. Mantich knew the ramp was dangerously steep; she appreciated the risk of falling; and she voluntarily continued to use the ramp. Mrs. Mantich, therefore, incurred the risk of her injuries as a matter of law and it was error to fail to grant the St. Mary's motion for judgment on the evidence. This cause is reversed and remanded with instructions to enter judgment for the defendant, St. Mary's Byzantine Church.

Reversed and remanded.

GARRARD, P.J., and NEAL, J., concur.