GET–N–GO, INC. Appellant,

v.

Viola MARKINS, Appellee.

No. 06S01–8910–CV–00737.

Supreme Court of Indiana.

Oct. 2, 1989.

Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

James H. Young, Young & Young, Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a jury trial in the Boone Circuit Court where Viola Markins was awarded a judgment of $125,000 for injuries sustained when she slipped and fell in the parking lot of appellant Get–N–Go, Inc. The Court of Appeals reversed the judgment, holding that Markins had incurred the risk of her injuries as a matter of law. The petition of appellee Markins for transfer to this Court is granted and the request for oral argument is denied.

■ On appeal, a reviewing court must look to the facts and inferences drawn therefrom that are most consistent with the judgment of the trial court. *State Farm Life Ins. Co. v. Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886. The facts most favorable to the verdict in this case are as follows. Markins lived in Indianapolis on Collier Street about 100 feet south of the Get–N–Go convenience store where she routinely did her grocery shopping. In the late afternoon of a cold winter day in December of 1983, Markins set out on foot to buy groceries at the store after first picking up her mail from the mail box in front of her house. She was sixty-eight years old at the time and a diabetic and needed food for her next day's breakfast to prevent a possible adverse reaction to her morning insulin injection. A freezing rain had made conditions very icy, and Markins, wearing flat-heeled boots, walked slowly

toward the Get–N–Go on the gravel shoulder of Collier because it provided better footing than the paved surface of the street. Once on the store's parking lot, Markins held on to a telephone pole and a parked car as she made her way to the raised sidewalk surrounding the store. Get–N–Go had failed to take any measures to ameliorate the dangerous condition of its parking lot and sidewalk. When Markins attempted to step up on the sidewalk, her foot slipped out from under her and she fell, sustaining serious injury to her knee.

In reversing the trial court, the Court of Appeals, in an unpublished opinion, held that Markins had incurred the risk of her injuries because she had actual knowledge of the layout of Get–N–Go's parking lot, of the accumulation of ice on the ground generally, of the accumulation of ice on the spot where she fell, and appreciated that ice was slick and caused people to fall and hurt themselves. Appellant Get–N–Go urges that the decision of the Court of Appeals should be upheld because it is based on facts contained in the record. This is not the correct standard of review.

■ When a trial court decides an issue adversely to a party who has the burden of proof on that issue, an appellate court is not free to reweigh the evidence or judge the credibility of the witnesses. Reversal of the trial court is warranted only if the evidence which is not in conflict leads solely to a conclusion contrary to that reached by the jury. *Spidel*, 246 Ind. 458, 202 N.E.2d 886.

■■ Incurred risk is an affirmative defense and the burden was therefore on defendant Get–N–Go to establish this defense by a preponderance of the evidence at trial. *Ridgway v. Yenny* (1944), 223 Ind. 16, 57 N.E.2d 581. This Court has previously noted in discussing incurred risk that it is not enough that a plaintiff have merely a general awareness of a potential for mishap, but that the defense demands a subjective analysis focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk. *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504

N.E.2d 552, 554, citing *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243. It involves a state of venturousness on the part of the actor. *Beckett*, 504 N.E.2d at 555. The evidence introduced at trial was, at best, conflicting on this issue.

■ Markins testified that she was generally aware of the icy conditions outside that day, but also testified that she was already on Get–N–Go's parking lot when she realized how dangerous that specific area was:

Q. Okay. Now, was there—was there ever a time that you thought to yourself, that—that is [sic] was bad out, that you shouldn't be out?

A. No, well, when—after I got up there and I thought when I stepped up there and seen how slick it was, then I thought, I get back home, I am not coming out no more.

Q. Where were you in relation to that telephone pole?

A. Just right there where I stepped up, past the telephone pole.

Q. Had you past [sic] the telephone pole?

A. Yeah.

Q. Okay. And I am sorry, you said you were just getting ready to step up when you thought that?

A. Yeah.

Another witness testified that she was not aware of the slippery condition of the steps and parking lot until after she had walked on the icy portions for a few steps. While this testimony alone could not support a finding that Markins was unaware of the specific risk involved since incurred risk demands a subjective analysis of the plaintiff's state of mind, such testimony nevertheless lent credibility to Markins's claim that she was not aware of the icy conditions until she was well onto Get–N–Go's parking lot, and the jury could have so concluded. Barring Markin's recovery on the grounds that she had a general awareness that ice was slick and caused people to fall and knew that conditions were icy outside on the day of her fall would preclude

recovery for virtually all who were injured on ice. As Markins herself testified, "anybody that knows anything about ice at all," knows it is slick and can cause people to fall. Our past decisions do not contemplate that a plaintiff's claim can be barred through such a general awareness of potential harm, *Beckett*, 504 N.E.2d 552, nor do they require that people confine themselves to their homes during periods of inclement weather. Necessity often dictates otherwise.

In this respect, Markins's actions were also not altogether voluntary. When incurred risk is at issue, the question often arises whether the plaintiff could or should have retreated once the danger and risk became apparent. We have held that even when a danger is known and appreciated, continued exposure to it does not amount to incurring its risk where there is no reasonable opportunity to escape from it or where the exposure is the result of influence, circumstances or surroundings which are a real inducement to continue despite the danger. *Ridgway*, 223 Ind. 16, 57 N.E.2d 581. The Court of Appeals has addressed this issue as well. In *Hollowell v. Midwest Smorgasbord, Inc.* (1985), Ind. App., 486 N.E.2d 16, *trans. denied*, the plaintiff entered the defendant's restroom and walked partially across the floor before he realized it was wet and dangerously slippery. He fell and injured himself and brought an action for damages. The defendant's motion for summary judgment was granted by the trial court on the grounds that the plaintiff was contributorily negligent and had incurred the risk of his injuries as a matter of law. The Court of Appeals, First District, reversed, holding that a jury could have reasonably believed that the plaintiff had found himself in a position of peril from which he may not have expected to escape unharmed and was thus forced to continue.

In *St. Mary's Byzantine Church v. Mantich* (1987), Ind.App., 505 N.E.2d 811, *trans. denied*, the plaintiff was injured when she fell down a ramp in the defendant church's kitchen. She brought suit and was awarded substantial damages. The church appealed, arguing that Mantich

had incurred the risk of her injuries because she was aware of the dangerous condition of the ramp yet continued to use it periodically over fifteen years. Mantich argued that her strong religious faith was an inducement for her to continue using the ramp and her actions were therefore not voluntary. The Court of Appeals, Third District, reversed, holding that Mantich had incurred the risk of her injuries and that religious convictions were not the sort of strong and compelling external circumstances that should relieve one of the responsibility for one's acceptance of such a risk. *Id.* at 814.

In the present case, the Court of Appeals found that the circumstances here were sufficiently similar to *Mantich* to make that case controlling. We think *Hollowell* provides a better template. In *Mantich*, the plaintiff's knowledge and appreciation of the risk was specific as she had seen a man fall on the same ramp where she fell. There was no real inducement for her to continue using the ramp. In *Hollowell*, on the other hand, the plaintiff did not become aware of the specific risk until he had been exposed to it and, faced with peril whether he continued or retreated, chose to continue since he was closer to his destination and the relief he sought in undertaking the journey than he was to his escape from the danger confronting him.

Similarly, here, Mrs. Markins needed food for her next day's breakfast to avoid a possible adverse reaction to her daily insulin injection and set out toward the Get–N–Go. She first salted her own steps and walk. She had a right to expect that Get–N–Go would do no less to its property. Indeed, there is no dispute that Get–N–Go, as a commercial business open to the public, had a continuing duty to deal with ice and snow on its premises for the safety of its customers. *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821. This duty was not extinguished by the knowledge of its customers concerning potential risks on the premises. Expecting to find relief from the icy conditions once on Get–N–Go's property, Markins was confronted instead with pavement slicker than the gravel she had been walking on. While

the evidence was conflicting, the facts most favorable to the jury's verdict show that she was on the more dangerous areas of Get–N–Go's parking lot before she became aware of this. At that point, she made a decision to continue since she was so close to the store and had a real need for the food. As in *Hollowell* and *Ridgway*, this was a real inducement for her to continue toward the store and thus relieved her of any responsibility for her injuries that she may have sustained by continued exposure to the dangerously icy parking lot since her actions were not wholly voluntary.

The evidence here does not lead solely to a conclusion contrary to that reached by the jury. Accordingly, the decision of the Court of Appeals is vacated and the judgment of the trial court is affirmed.

GIVAN and DICKSON, JJ. concur.

SHEPARD, C.J., dissents with separate opinion in which PIVARNIK, J. concurs.

SHEPARD, Chief Justice, dissenting.

I think the Court of Appeals was correct in concluding that the facts in this case establish as a matter of law the defense of incurred risk. Put in its simplest form, the rule is that "a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger." Black's Law Dictionary 113 (5th ed. 1979) (assumption of risk). If this defense is to have much meaning, I would expect that should bar claims by someone who sees that there is snow and ice on the ground, knows that there is ice on the parking lot she is about to cross, pauses to assess the danger of crossing it, and elects to try. Strong as the impulse might be to vote in favor of an elderly diabetic and against the convenience store and its carrier, I think the defendant made out a legally sufficient case of incurred risk and is entitled to prevail under the law.

PIVARNIK, J., joins in this dissent.